(No. 6370. July 15, 1937.)

MABEL C. TOWNE, Respondent, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Corporation, Appellant.

[70 Pac. (2d) 364.]

A. H. Oversmith and Edward E. Poulton, for Appellant.

Guy W. Wolfe and J. H. Felton, for Respondent.

BUDGE, J.—April 15, 1935, appellant issued a policy of insurance for $1,000 on the life of Harry O. Towne, payable to respondent Mabel C. Towne. The insured died on September 16, 1935, and this action was thereafter instituted by respondent to recover upon the policy. The allegations of the complaint were admitted and as a sole defense or in avoidance of liability appellant alleged that the insured on September 16, 1935, "did commit suicide and intentionally destroyed his own life" and set up the following provision of the policy of insurance:

"If within two years from the date hereof the Insured shall die by his own hand, whether sane or insane, the liability of the Company under this Policy shall be limited to the amount of reserves hereon."

The jury returned a verdict in favor of respondent in the sum of $1,013.15 and judgment was entered thereon and this appeal was taken from the judgment.

■ The first, second and sixteenth specifications of error are to the effect that the court erred in overruling appellant's motion for a mistrial because of alleged misconduct of respondent's attorney in the *voir dire* examination of the jury, that the error was not cured by the court's instructions and that the court erred in overruling the motion to discharge the jury because of the misconduct of respondent's attorney. The record discloses that the following took place after the *voir dire* examination of all jurors by counsel for the respective parties:

"(After completion of the examination of each individual juror, Mr. Felton propounded the following question:)

"Mr. FELTON: Do any of you have any objection to a poor widow bringing an action against an Insurance Company to recover under an insurance Policy?

"Mr. OVERSMITH: Now if the Court please, we move for a mistrial on the ground that Counsel has made a prejudicial statement here before the jury. (Argument omitted.)

"Mr. OVERSMITH: I don't know whether the stenographer got the question or not.

"The COURT: The question was, Counsel asked if there was any reason why they should not render a fair and impartial verdict between this poor widow and the insurance company—that is the substance of it."

The examination of the veniremen, except for this one question, is not in the record. No questions asked by counsel for appellant appear and the record is silent with respect to and fails to disclose the general trend of the examination or the line followed in the examination of the jury. It is impossible to ascertain from the record for what purpose, if any, counsel for respondent asked the question objected to or what prompted the question, if anything.

"The extent to which parties should be allowed to go in examining jurors as to their qualifications cannot well be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound discretion of the court, the exercise of which

will not be interfered with unless clearly abused." (35 C. J., p. 389, sec. 437.)

See *Donovan v. People*, 139 Ill. 412, 28 N. E. 964.

However, the record shows no justification for such a question but in view of the court's instructions and admonition to the jury it did not constitute such prejudicial error as would warrant a reversal. It appears that the court verbally instructed the jury immediately after the remark was made and prior to the taking of evidence:

"To pay absolutely no attention to the remark concerning the condition of the respective parties to this case. You are here to do equal and exact justice between these parties, irrespective of their standing in life or anything of that sort, and will not be influenced in any manner by any statement made by any attorney which upon its face, you consider may have been made to influence your mind upon the respective conditions of these parties. Such remarks are improper, and you will eradicate them so far as possible from your minds, and pay no attention to them."

In the written instructions submitted to the jury Instruction number 8, as follows, was given:

"Gentlemen, you will recall during the course of this trial a remark made by counsel respecting the plaintiff being a 'poor widow.' You are specifically instructed to totally disregard any statement made by counsel in this respect as there is not and cannot be any evidence to support such a statement. It is your duty to follow the law and the instructions given you by the court, and you must decide this case without any feeling, sympathy or prejudice for or against either the plaintiff or the defendant, and decide the case on its merits the same as you would between two individuals."

With reference to a similar situation in *Watkins v. Mountain Home Co-op. Irr. Co.*, 33 Ida. 623, 197 Pac. 247, this court said:

"Something must be presumed for the intelligence and fairness of the jurymen, and that they will not ordinarily be influenced into rendering a verdict contrary to the instructions of the court and the evidence, by every idle or improper remark that may be made during the progress of a trial."

and:

"In view of the apparently painstaking attention given to the 'particular questions of fact' submitted to the jury, and having in mind the entire record, we are of the opinion that the minds of the jurymen could not have been greatly influenced by the remarks of counsel complained of, and in view of the court's instruction, that they do not amount to prejudicial error."

In view of the fact that the entire record is not before us and that the jury was instructed to disregard the question or remark complained of we are not disposed to determine that the remarks amounted to prejudicial error.

Under appellant's third specification of error it is claimed the court erred in allowing respondent to introduce the policy of insurance in evidence at the opening of the trial, since appellant had admitted the execution of the policy and the other facts alleged, and relied solely upon the suicide clause for its defense. Appellant urges it thus had the fundamental right to open and close the evidence and argument. The record discloses that as a matter of fact appellant was allowed to and did close the evidence and argument, but that respondent was permitted to offer in evidence the Insurance policy, Plaintiff's Exhibit "A," at the outset of the case, after appellant's opening statement, but prior to the introduction of evidence on behalf of appellant. The record discloses the following:

"Opening Statement on Behalf of Defendant (by Mr. Oversmith):

"The COURT: The Plaintiff will introduce his evidence.

"Mr. OVERSMITH: Don't you mean the defendant?

"Mr. FELTON: If the Court please I ask to introduce in evidence Plaintiff's Exhibit A, which is an insurance policy, No. 2626049.

"Mr. OVERSMITH: To which we object as incompetent, irrelevant and immaterial at this time, the plaintiff having nothing to prove, and cannot open the case. *That is proof that goes in on our side of the case.*

"The COURT: It goes in on both sides I guess, so far as that is concerned. As I understand this is the policy upon which the action is founded?

"Mr. FELTON: Yes, Your Honor.

"The COURT: It will be in evidence."

It appears that respondent's case was founded on the provisions of the policy and that the answer admitted the due execution and delivery of the policy in question, and likewise appellant's defense was founded upon a provision of the policy. Any possible prejudice to appellant occurring because of permitting the policy to be placed in evidence, out of order or otherwise, is untenable and appellant has pointed out no prejudice.

■ Specifications of error IV to X, inclusive, are discussed together by appellant. These specifications urge as error the court's overruling of objections made to certain questions upon the cross-examination of the witness Taylor, on the ground they were incompetent, immaterial, irrelevant and not proper cross-examination. It is urged at some length that these matters were not gone into on direct examination of the witness and were thus not proper subjects of cross-examination. The criticism appears wholly unfounded as to some of the questions as will appear from an examination of the quotation of questions and answers from the direct examination followed by the questions objected to, several of the questions asked on cross-examination being in direct line with the direct examination:

Direct:

"Q. Did you see Harry Towne on Saturday?

"A. Yes sir, I was working right with him.

" . . . .

"Q. Did you see him at any time on Sunday?

"A. Yes, sir . . . . "

Questions objected to on cross-examination:

"Q. When and where did you see this man on Saturday—no, I mean on Sunday?"

"Q. Under what circumstances did you see this man on Sunday?"

"Q. Just explain the circumstances of seeing him, who was with you at the time?"

"A. My son was with me.

"Q. Was anybody with Harry Towne?"

■ The remaining questions objected to and referred to in the specifications of error were with reference to objects found on the stove in the cabin where deceased was found, and as to the condition of such objects, the alleged objectionable questions being as follows:

"Q. Were there any grounds on the outside?" (of the coffeepot).

"Q. When you saw the stove you saw the coffee pot on it?

"A. Yes sir.

"Q. In what condition?"

"Q. Was there a frying pan at or near the stove?"

On direct examination testimony was elicited from the witness to the effect that he had entered the cabin, found Towne dead, smelled a strong odor of gas, looked at the stove and found it to be a two-burner stove with one burner clear open and the other burner on, and that he (the witness) then turned off the burners with a turn-cock. It is apparently appellant's contention that the witness should not have been permitted to testify as to what was on the stove, that being a subject entirely distinct from appellant's seeing the stove and finding the burners both on, turning them off, etc., and that such questions were therefore not within the legitimate scope of cross-examination. The rules governing cross-examination are recited in I. C. A., sec. 16–1205, as follows:

"The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions; . . . . "

■ Although cross-examination is limited to facts stated in the direct examination or connected therewith, this allows cross-examination not only as to all facts stated by a witness in his original examination, but as to other facts connected with them, directly or indirectly tending to explain, modify or qualify the inference resulting from the facts stated by the witness in his direct examination. (*State v. Anthony,* 6 Ida. 383, 55 Pac. 884; *State v. Webb,* 6 Ida. 428, 55 Pac. 892; *State v. Gruber,* 19 Ida. 692, 115 Pac. 1; *Park v. Johnson,* 20 Ida. 548, 119 Pac. 52; *Lawder v. Hinderson,* 36 Kan. 754, 14 Pac. 164; *State v. Rodgers,* 40 Mont. 248, 106 Pac. 3; *Anderson v. Berrum,* 36 Nev. 463, 136 Pac. 973; *Hand v.*

*Hickock,* 98 Okl. 125, 224 Pac. 505; *Gibbons v. Territory,* 5 Okl. Cr. 212, 115 Pac. 129; *People v. Turco,* 29 Cal. App. 608, 156 Pac. 1001.)

After having described and illustrated, in detail, how a coat, found near the door of the cabin, was lying with reference to the door, the witness Gasser was asked the following question:

"Now, with reference to the coat, you may state whether or not it had the appearance of being laid or placed there or having fallen there?"

The following question was asked the witness Redden:

"The paper back of the window, did it appear to be stuffed in there?"

Objections to both these questions heretofore quoted were sustained, and, by specifications of error XI and XIII appellant urges the trial court erred in this respect. Objections to questions which call for a conclusion are properly sustained. (*Ross v. Kerr,* 30 Ida. 492, 167 Pac. 654; 22 C. J., p. 485, sec. 588, p. 492, sec. 592; Jones Commentaries on Evidence, 2d ed., secs. 1241 to 1245, incl.; *Johnson v. Underwood,* 102 Or. 680, 203 Pac. 879; *Scarpelli v. Portland Electric Power Co.,* 130 Or. 267, 278 Pac. 99; *State v. Yeater,* 95 Kan. 247, 147 Pac. 1114.) It furthermore appears that appellant was permitted to and did fully question these witnesses as to the facts with relation to the coat on the floor and the paper in the window.

The witness Redden testified to the effect that Taylor, when he came back after having been down to the cabin, said:

"The man down there has killed himself."

which answer was stricken upon respondent's motion, and the court's action is specified as error by specification number XII, appellant urging that the statement was a part of the *res gestae* and admissible in evidence. This statement was allegedly made by Taylor late in the afternoon of the day following that on which Towne died, immediately after Taylor had gone to the cabin and found Towne lying on a bed in the cabin. The admission of evidence as part of the *res gestae* is left largely to the sound discretion of the trial

court. (*Erickson v. Edward Rutledge Timber Co.*, 33 Ida. 179, 191 Pac. 212; *Coffin v. Bradbury*, 3 Ida. 770, 35 Pac. 715, 95 Am. St. 37.) It would appear that the question above quoted and the answer is subject to the same criticism and ruling as that recited in *Wheeler v. Oregon R. R. etc. Co.*, 16 Ida. 375, at 407, 102 Pac. 347, wherein this court said:

"The plaintiff moved that this testimony be stricken out as hearsay and not part of the *res gestae*, and the motion was sustained. This statement of Mrs. Grant certainly could not be against interest, for she had no interest in the result of the trial. The plaintiff in the case was the father of the child injured. Mrs. Grant had no interest in the result so far as the record in this case appears. Her declarations were merely hearsay and could not bind the plaintiff. (*Norfolk & W. R. Co. v. Groseclose's Admr.*, 88 Va. 267, 13 S. E. 454, 29 Am. St. 718; Elliott on Evidence, sec. 443.)

"Neither was this evidence admissible as part of the *res gestae*. This statement made by Mrs. Grant was not a statement of the facts surrounding the accident, but was a conclusion or opinion, she saying that the accident was her own fault and no one else was to blame. That was an opinion, not a statement of the facts. She may have been in error as to who was at fault. As said by the court in the case of *Lane v. Bryant*, 9 Gray (Mass.), 245, 69 Am. Dec. 282:

" 'The declaration of the defendant's servant was incompetent and should have been rejected. It was made after the accident occurred and the injury to the plaintiff's carriage had been done. It did not accompany the principal act, on which the whole case turned, or tend in any way to elucidate it. It was only the expression of an opinion about a past occurrence, and not part of the *res gestae*. It is no more competent because made immediately after the accident than if made a week or month afterward.' "

See also: *Chicago & E. Ry. Co. v. Cummings*, 24 Ind. App. 192, 53 N. E. 1026; *Indianapolis St. Ry. Co. v. Taylor*, 164 Ind. App. 155, 72 N. E. 1045.

Specification of error XIV urges that the court erred in ruling upon the admission in evidence of appellant's Exhibit "4" by remarking:

"I will let it in, I don't see that it makes any difference." The remark does not appear to have been prejudicial to appellant and no objection was made to the remark at the time of the trial. Remarks of a trial judge, not excepted to, will not be reviewed by this court. (*McLaughlin's Store v. Copeman*, 50 Ida. 214, 294 Pac. 523, and cases there cited; *Slusser v. Aumock*, 56 Ida. 793, 59 Pac. (2d) 723; *Estate of Brown*, 52 Ida. 286, 15 Pac. (2d) 604; *State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540; *Giraney v. Oregon S. L. R. Co.*, 54 Ida. 535, 33 Pac. (2d) 359.)

Appellant's remaining assignment of error, assignment XV, is that the court erred in overruling the motion for directed verdict made by appellant's counsel at the close of the testimony. With relation to this assignment appellant urges that "The admission made by filing proof of loss as was done in this case, . . . . was important evidence to be considered by the jury as well as by the court upon the motion for a directed verdict" and urges that the court destroyed the effect of such evidence by a statement "that it did not bind the plaintiff unless she knew that insured committed suicide." It does not appear that appellant made any objection or took any exception to the remarks at the time of the trial and under the rule heretofore cited, they will not be reviewed. (Cases *supra.*)

In connection with the fifteenth assignment of error appellant urges a second proposition in the following language:

"The death certificate furnished by the Department of Vital Statistics of the State of Idaho was admissible in evidence and was '*prima facie* evidence in all courts and places of the facts therein stated.' The certificate itself stated that the 'cause of death was as follows: Illuminating gas. Asphyxiation. Suicide.' This admission of the cause of death, unexplained and uncontradicted, should have been considered conclusive, but instead was effectively stricken from the case and from the consideration of the jury as well as the court."

Appellant then cites numerous authorities to, and urges the proposition that, the death certificate was *prima facie* evidence of the cause of death and urges that a verdict should

have thus been directed since such evidence was not explained, contradicted or rebutted by respondent. It is not necessary to determine the effect of such evidence, as a careful search of the entire record fails to disclose that appellant either introduced or offered to introduce the "death certificate furnished by the Department of Vital Statistics" to which it refers, or any other such evidence. There is no such evidence in the record. The evidence introduced is to the effect that Towne died and that the cause of death appeared to be asphyxiation. Appellant introduced evidence, circumstances attending the death, in an effort to show that the asphyxiation was suicide. Respondent, on the other hand, introduced evidence in an effort to show that the death was accidental. Appellant's argument with respect to a right to a directed verdict is not founded upon facts as disclosed by the record. Questions or matters not presented in the record will not be considered on appeal. (*Ramsey v. Hart,* 1 Ida. 423; *Medbury v. Maloney,* 12 Ida. 634, 88 Pac. 81.)

The judgment is affirmed. Costs awarded to respondent.

Morgan, C. J., and Holden and Ailshie, JJ., concur.

Given, J., deeming himself disqualified did not sit or participate.