STATE ex Rel. WULF, Relator, *v.* McGRATH, County Clerk, Respondent.

(No. 8,158.)

(Submitted October 3, 1940. Decided October 11, 1940.)

[106 Pac. (2d) 183.]

*Mr. W. D. Kyle* and *Mr. Rex F. Henningsen,* for Relator, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Lee Metcalf,* Assistant Attorney General, for Respondent; the latter argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The relator seeks a writ of mandamus to be directed to the clerk of Silver Bow county requiring him to print on the official ballot for the general election the name of the relator as a candidate for the House of Representatives. At the primary nominating election held on July 16, 1940, the relator's name was written in by 130 qualified voters, sufficient to nominate him for the position upon compliance with the statute as to acceptance. The canvass of the votes in Silver Bow county was not completed until the 26th day of July, 1940; on August 3 the relator appeared before the clerk and presented a document which purported to be an acceptance of the write-in nomination and tendered the requisite fee. Although it is not clear, it appears that the clerk refused to accept the tendered and proffered fee and it is not questioned that he refuses to certify that the relator is a candidate for the office and have his name printed on the official ballot. The determination of the question before us depends on the construction to be given this language in section 640, Revised Codes of 1935:

"Any person receiving the nomination by having his name written in on the primary ballot, and desiring to accept such nomination, shall file with the secretary of state, county clerk, or city clerk, a written declaration indicating his acceptance of said nomination within ten (10) days after the election at which he receives such nomination, and at the same time he shall pay

to the officer with whom such declaration of acceptance is filed the fee above provided for filing a primary nominating petition for such office. No candidate receiving a nomination at a primary election as above provided shall have his name printed on the official ballot for the general election without complying with the provisions of this section."

It is urged by relator that the term "election" as used in this section adopted by the people as an initiative measure contemplates the complete process of election, including a canvass of the votes. In other words, that in the use of the term "election" in fixing the date from which the ten-day period provided by the statute shall begin to run it was contemplated by the people that the period should begin to run not from the election day but from the day on which the canvass of the votes in the particular county was completed. Relator urges that as a matter of public policy this should be so and that any other construction might serve to nullify other statutes. He points out particularly section 651, Revised Codes, which provides that any person nominated upon more than one ticket shall within ten days after the election file with the county clerk a written designation under which party his name is to be printed on the official ballot. Relator points out that until the completion of the canvass the person will not know that he received the most votes on either ticket or both, and in the larger counties it is altogether improbable that the canvass could be completed within ten days after the day of election.

Relator also calls attention to section 659, which requires that notice of contest must be filed within five days from the time the person shall claim to have been nominated, urging that until the canvass is completed in many cases it would be impossible to tell that the prospective contestee has received the high number of votes.

Relator also points to the provision of Chapter 181 of the 1937 Session Laws, relating to drawing lots for the election of a candidate where two or more candidates receive the highest number of votes for nomination, and the provision in that chapter requiring the clerk to notify these tied candidates of that fact,

which may not be, without any violation of the law, until after the ten-day period for acceptance if computed from the day of election.

Other sections of the statute are quoted to sustain the argument of relator that reason would compel the acceptance of their position that the word "election" as used in section 640 refers to the complete process including the canvass instead of the election day. Much can be said for this viewpoint, but this court is limited to the single query: What did the people intend when they used the word "election" in section 640?

An examination of all the statutes forces us to the conclusion that the people had in mind when they used the term "election" as fixing the beginning of a ten-day period, the actual election day rather than the whole election process. In many parts of the general election laws the term "election" is used in fixing the beginning of a period of time before and after which certain acts must be done. The term "election day" *is not used in the statute,* but instead the single word "election" is used. In these sections of the statute there can be no possible question but that the clear intention of the people when they used the term "election" was to designate the day of election and not the general process as contemplated by the citation from 9 R. C. L. 1113, so much relied upon by relators:

Section 116, 9 R. C. L., page 1113, reads in part as follows: " 'An election is a process which includes registration, nomination, the voting and the manner in which the votes are to be counted and the result made known. Each of these steps must be taken in pursuance of the law existing at the time the election is had. The declaration of the result is an indispensable adjunct of what the choice is and by which the person elected can know that he is entitled to the office.' "

There can be no question but that the people in using the term "election" in section 632, Revised Codes of 1935, had in mind election day. That section provides: "On the third Tuesday of July preceding any general election * * * at which public officers in this state and in any district or county are to be elected, a primary nominating election shall be held." This

is also true of section 633, which provides that the county clerk "thirty days before any primary nominating election * * * prepare printed notices," and section 636, which provides: "Immediately after the closing of the polls at a primary nominating election, the clerks and judges * * * shall open the ballot-boxes." Section 533 states that the Governor must issue a proclamation for election "at least sixty days before a general election," and under section 535 the proclamation must be published "and to be posted at each place· of election at least ten days before the election." Similar provision is made in section 538 for publication in a county and municipal election "before the election." Section 567 provides "The county clerk shall, at least 15 days preceding any municipal primary nominating election in towns and cities, and at least thirty days preceding any other election," cause to be printed and posted lists of electors.

Section 790 provides that the Board of County Commissioners must meet as the Board of County Canvassers "within ten days after each election * * * to canvass the returns."

From the foregoing portions of the statutes quoted there can be no question but that in those sections the people in using the term "election" had in mind election day. Used in exactly the same way in the sections last above cited as it is in section 640, we cannot see that this court could be justified in defining the term "election" in any other way than it was used by the legislature and the people in these sections as to which there can be no doubt as to the legislative intent.

A similar question was before this court in the case of *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836, 837. There the section of the statute to be construed declared that the contest proceedings for the causes mentioned in the petition of the contestant must "be commenced within forty days after the return day of the election." (Laws 1913, p. 610, sec. 40.) The contestant's view was that the return day meant the day on which the canvass was completed and the results declared. In disposing of the argument the court said: "That construction of the language does not appear to be admissible. Section 40 first

deals with election contests generally and employs the phrase with reference thereto. It then proceeds: 'A contest of the nomination or office of Governor or Representative or Senator in Congress must be commenced within twenty days after the declaration of the result of the election.' It will thus be seen that the lawmakers employed one form of expression to characterize one act and a different form of expression to give character to another act. When they desired to refer to the day upon which the results of the election are declared, they experienced no difficulty in selecting appropriate words to express their meaning, and the fact that they did so express themselves in the one instance would indicate that in using the phrase 'return day of the election' in the other a different day was intended." This language is applicable also in this case.

In section 828.1, which provides for a recount of votes, no difficulty was found in wording the requirement that the action be commenced within five days after the canvass of the returns. In that section this language is used: "Any unsuccessful candidate * * * may within five days *after the canvass of the election returns* * * * apply * * * for an order * * * to make a recount."

Several Texas cases are cited which contain the same general definition of "election" found in the quotation from 9 R. C. L. And with these definitions we have no quarrel, but as we have stated we are bound by the sense in which the legislature used the term. To hold as relator asks would require a ruling that the word used in the identical sense in two statutes means one thing in one section, another in the other. That we cannot do.

But one court has passed on the question before us. In the Alabama statutes there is a requirement that the elected sheriff file his bond within fifteen days after "the election." In *State ex rel. Harris* v. *Tucker*, 54 Ala. 205, the same argument was advanced as by relator here. The court held adversely to that contention as do we.

The writ is denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ARNOLD concur.