356 P.2d 57

Mark HANSEN, Plaintiff-Appellant,

v.

Sarah DEVANEY, County Auditor and Clerk Ex-Officio of the District Court of Bannock County, Defendant-Respondent.

No. 8957.

Supreme Court of Idaho.

Oct. 13, 1960.

R. M. Whittier, Pocatello, Harold Ranquist, Boise, for appellant.

Hugh C. Maguire, Jr., Pros. Atty., Bannock County, James B. Green, Deputy Pros. Atty., Bannock County, Pocatello, for respondent.

PER CURIAM.

Appellant (plaintiff) seeks a writ of mandate to compel respondent (defendant) as Bannock County Auditor to issue to appellant a certificate of nomination, thereby to entitle his name to be included on the general election ballot as the Republican party candidate for probate judge in Bannock County.

At the nominating election held June 7, 1960, in Bannock County, no candidate sought nomination as probate judge on the Republican ticket. The abstract of votes cast at such election, upon canvass of the returns thereof by the Board of County Commissioners, acting as the County Board of Canvassers, certified to respondent, disclosed that three persons received written in votes for such office on the Republican ticket, i. e., Mrs. J. Argyle Jordan, 17 votes; W. H. Jensen, 12 votes; and appellant Hansen, 1 vote.

Respondent mistakenly read the abstract of votes cast for Mr. Jensen as 21, rather than 12, and June 20, 1960 sent to Jensen a certificate of nomination as probate judge, although Mrs. Jordan had received the highest number cast for such office, on the Republican ticket. Mr. Jensen immediately declined the nomination.

June 24, 1960, appellant filed with respondent his declaration of candidacy for such office and paid the required filing fee.

June 27, 1960, Mrs. Jordan inquired of respondent why she had not received her certificate of nomination and learned that respondent had mailed such a certificate to Mr. Jensen. The following day, June 28, 1960, respondent discovered that in fact Mrs. Jordan had received the highest number of votes for such office on the Republican ticket. Respondent subsequently admitted her error.

June 30, 1960, Mrs. Jordan inquired as to what action respondent was going to take about issuing a certificate of nomination to her, Mrs. Jordan, for the office of probate judge on the Republican ticket. Respondent was ill and away from her office, unable to perform her official duties, June 30th to July 2nd, 1960; the ensuing week end and holiday of July 4th then intervened so that it was not until July 5, 1960, upon her return to her official duties that she issued a certificate of nomination on the Republican ticket as probate judge to Mrs. Jordan, inasmuch as she had in fact received the highest number of votes cast for such office at the nominating election. Mrs. Jordan, thereupon, July 5, 1960, filed her declaration of candidacy for such office and paid the requisite filing fee.

In the meantime the Republican County Central Committee of Bannock County, at a meeting held June 28, 1960, designated appellant as the Republican candidate for probate judge, and July 7, 1960, notified re-

spondent of its action in the premises. July 12, 1960, respondent tendered back to appellant his proferred filing fee, admitted her error, and advised him that she had issued a certificate of nomination to Mrs. Jordan, and intended to place her name on the ballot as Republican candidate for probate judge at the general election to be held November 8, 1960.

Subsequently, August 22, 1960, appellant filed his petition praying for issuance of a writ of mandamus to compel respondent to include appellant's name as Republican candidate for probate judge, on the general election ballot. Alternative writ of mandate issued with a show cause order directed to respondent.

Respondent filed her affidavit and answer, setting forth the facts herein related, acknowledging that she refused to issue to appellant the certificate of nomination for such office, and alleging Mrs. Jordan's entitlement thereto. Respondent also filed a motion to dismiss the alternative writ of mandate.

At the hearing before the trial court the parties agreed that the question to be resolved was whether there existed a vacancy for the office of probate judge on the Republican ticket to be filled by the Republican County Central Committee.

The trial court granted respondent's motion to dismiss the alternative writ of mandate upon the theory that appellant, in seeking the mandate, had pursued an improper remedy, but deeming the matter of sufficient public importance, decided it on the merits. The court concluded that under the facts no vacancy existed on the Republican ticket for the office of probate judge of Bannock County to be filled by the Republican County Central Committee, and thereupon entered judgment quashing the alternative writ of mandate and dismissing the proceeding. Appellant has appealed from the judgment.

Appellant, contending the trial court erred in granting the motion to dismiss, asserts that he became entitled to the nomination as probate judge on the Republican ticket instead of Mrs. Jordan, to whom respondent issued the certificate of nomination. The trial court based the dismissal on the theory that respondent, by writ of mandate, could not be compelled to perform differently the act of issuing the certificate which she had theretofore accomplished.

Appellant by his petition seeks, by mandamus, to compel respondent to include his name on the general election ballot as Republican candidate for probate judge and prays that the Court take jurisdiction of the case to determine the question involved.

The Bannock County board of canvassers having certified to respondent as county auditor the name of Mrs. Jordan as nominee for probate judge on the Republican ticket, I.C. § 34–636, and she having paid the

filing fee under the circumstances hereinbefore related; and appellant having been named as the Republican candidate for such office by the Bannock County Republican Central Committee, respondent became faced with the duty of causing to be printed on the official ballot, for use at the ensuing general election, the name of the duly nominated candidate for such office. I.C. §§ 34–903 and 34–904.

■ The petition thus discloses, both in form and essence, that mandamus is the proper procedure to determine whether respondent should be required to cause appellant's name as the Republican candidate for such office to be included on the general election ballot. Idaho Const. art. 5, § 9; I.C. § 7–302; Boughton v. Price, 70 Idaho 243, 215 P.2d 286.

Appellant relies upon I.C. § 34–607 to defeat Mrs. Jordan's asserted right to have her name placed on the official ballot as the Republican candidate for probate judge in the ensuing general election. The portion of such section of the statute, relevant here, reads:

"Fee for filing—Time of payment—Effect of failure to file.—A fee shall be paid by or on behalf of each candidate for office at the time of filing his declaration of candidacy, and any person who is nominated by having his name written in on the ballot at the nominating election shall be required

to pay the same fee required had he filed a declaration of candidacy * * * within 20 days after the nominating election, or the action of said candidate in failing to pay said filing fee shall be construed as a declining of the nomination * * *, and such nomination shall be void."

No dispute exists in the essential facts hereinbefore related; particularly, Mrs. Jordan, at the nominating election, having received the highest number of written in votes, won the Republican party nomination for the office of probate judge; through the clerical error respondent failed to notify Mrs. Jordan officially of such nomination until expiration of the statutory period of 20 days, and July 5, 1960, she paid the filing fee, and received the certificate of nomination, although she had called at respondent's office on June 27, 1960, in time to have conformed with the requirements of I.C. § 34–607, and would have done so except for respondent's inadvertent misstatement.

We are aware of the ambiguous terminology contained in the 1959 amendment to I.C. § 34–607, Idaho Sess.Laws 1959, ch. 125, § 1, p. 270, that the filing fee shall be paid within 20 days "after the nominating election." Certain authorities hold that a canvass and announcement of the result of an election is an integral part thereof; O'Neil v. Jones, 185 Tenn. 539, 206 S.W.2d

782, 1 A.L.R.2d 581; and others hold that an election is not deemed complete until the result thereof is determined and declared, 18 Am.Jur., Elections, § 268, p. 357, citing State ex rel. Morris v. Bulkeley, 61 Conn. 287, 23 A. 186, 14 L.R.A. 657; Gragg v. Dudley, 143 Okl. 281, 289 P. 254.

■ We are constrained to the view, however, that the legislature intended the foregoing quoted phraseology of the 1959 amendment to I.C. § 34–607, to refer to the date the nominating election is held and to require payment of the filing fee within 20 days after the date of holding such election. State ex rel. Wulf v. McGrath, 111 Mont. 96, 106 P.2d 183; Wilkinson v. La Combe, 59 Mont. 518, 197 P. 836.

■ Appellant contends that the trial court denied him the right to produce evidence relative to any notice which Mrs. Jordan may have received of her write-in nomination. We have searched the record in vain in that regard. Questions or matters not presented in the record will not be considered on appeal. Towne v. Northwestern Mut. Life Ins. Co., 58 Idaho 83, 70 P.2d 364; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347.

Question has arisen as to whether the duty devolves on respondent county auditor to deliver a certificate of nomination to the person receiving the highest number of votes for a county office at a nominating election. I.C. § 34–617, contained in Idaho Code, Title 34, ch. 6, relating to nominating elections, provides in part:

"Provisions relating to general elections applicable.—*The provisions of the general election laws relative to the holding of elections,* the appointment of judges and clerks of election, the solicitation of voters at the polls, the manner of conducting elections, the officers and duties thereof at elections, the counting of ballots and making returns of the results, the canvassing of returns, *and all other provisions relating to general elections, shall apply to nominating elections so far at they are applicable and consistent with the provisions of this act,* the intention of this act being to place the holding of elections for the nomination of candidates for office under protection and regulation of general laws now in force, as far as possible, adding thereto the special features herein contained. * * *." (Emphasis supplied.)

And I.C. § 34–1210, part of the general election laws, provides in part:

"Canvass of returns—Abstracts of votes—Certificate of election.—* * * and it shall be the duty of the auditor of the county immediately to make out a certificate of election to each of the persons having the highest number of votes for county and precinct officers,

respectively, and cause such certificate to be delivered to the person entitled to it."

It is thus clear that respondent, in causing the certificate of nomination to be delivered to Mrs. Jordan, acted pursuant to statutory duty imposed upon her.

We now approach the question whether Mrs. Jordan's failure to pay the requisite filing fee within the 20 days as required by I.C. § 34–607, may be excused inasmuch as her dereliction was through no fault of her own, but through respondent public official's clerical error.

■ We recognize that the provisions of I.C. § 34–607 must be construed as mandatory in all cases where the dereliction occurs by reason of the nominee's own fault or neglect. Seawell v. Gifford, 22 Idaho 297, 125 P. 182. Our problem here is to decide whether such section of the statute must be construed as mandatory in this proceeding in the light of the manifest clerical error which precluded Mrs. Jordan from observing the statutory provisions with respect to paying her filing fee within the time limit.

■ I.C. § 34–607 provides that failure to pay the filing fee within the 20 days after the nominating election shall be construed as a declining of the nomination. This section of the statute and the therein referred to § 34–647, presupposes official notice and knowledge on the part of the nominee of the nomination in order to decline it, which situation did not attain as to Mrs. Jordan during the 20 days after the nominating election. For here, Mrs. Jordan made inquiry on the 20th day after the nominating election, as to whether she had received the Republican nomination for probate judge, and respondent public official advised Mrs. Jordan that she had not, but that another had received such nomination. Moreover, respondent was charged with the duty of giving official notice by publication in the premises, I.C. § 34–646, and of receiving the requisite filing fee from the nominee, I.C. § 34–608. When respondent issued the certificate of nomination to Mrs. Jordan, after imparting the information that she was the nominee, the 20 days had expired, not due to any fault or dereliction on her part but due to the related error of respondent public official.

Respondent's mistake if allowed to stand in the way of Mrs. Jordan's right to the nomination, would not only deprive Mrs. Jordan of a valuable right but would operate as a constructive fraud as to Mrs. Jordan in depriving her of such right. McGhee v. McGhee, 82 Idaho 367, 353 P.2d 760. This the law never intended.

Finally, this Court in Tiegs v. Patterson, 79 Idaho 365, 318 P.2d 588, recognized the sacred American principle that the real

right or title to the office comes from the will of the voters, as expressed at the election.

The judgment of the district court dismissing the proceeding, is affirmed.

No costs allowed.