No. 29,908.

STELLA RAY, *Appellee*, v. THE RORABAUGH-PAXTON DRY GOODS COMPANY, *Appellant.*

(7 P. 2d 76.)

Opinion filed January 30, 1932.

*William C. Harris, W. L. Harris, Owen S. Samuel* and *Robert H. Hudkins,* all of Emporia, for the appellant.

*I. T. Richardson,* of Emporia, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for the breach of a contract. Defendant denied liability and had a cross petition for damages. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed.

The facts may be stated briefly as follows: The plaintiff for several years had been a cateress in private homes and at the Country Club at Emporia. The G. W. Newman Dry Goods Company, which conducted a large store at Emporia, had a tea room in connection therewith, which was operated under the name of the Newman tea room. In September, 1926, the dry goods company, by its manager, F. J. Scott, entered into a written contract with plaintiff and her husband, in which the parties were designated lessor and lessee, respectively, and by the terms of which the dry goods company leased to plaintiff, or permitted her to use, the room in which the tea-room business was conducted and the equipment therein, "including, but not limited to," the chairs, tables, linen, silverware, dishes and glassware, kitchen equipment and electric appliances, and in addition agreed to replace such chinaware and linens as might be necessary to provide an adequate supply. An inventory was to be taken of the equipment, which was to be returned at the termination of the agreement, ordinary wear and tear excepted. It was to be operated under the name of the Newman Tea Room, and the door between it and the store was to be kept open at all times of the day when the store was open. It recited that the Newman tea room had heretofore been awarded the red seal by the state hotel commission in recognition of the high standard under which it was operated, and plaintiff agreed to so operate the place that it would be entitled to maintain that standard, and to conform with all legal regulations concerning the operation of the tea room. "In this connection, said lessor agrees to coöperate in every manner to enable lessees to do so and to make the operation of said tea room a success." The dry goods company was to pay the taxes and insurance on the equipment owned by it, and was to have eight per cent of the gross receipts of the business. There was provision about adjusting the expense of telephone and electric light. It was agreed that the interior should be redecorated at the expense of plaintiff, but if she continued to operate the tea room for a period

of one year she would be reimbursed for the sum so expended to the amount of $290.

Plaintiff commenced the operation of the tea room under this agreement in September, 1926, and continued to do so until in July of 1927. Early in the year 1927, perhaps in March, the G. W. Newman Dry Goods Company sold its business to the defendant herein, the Rorabaugh-Paxton Dry Goods Company, which assumed its obligations. In May, 1927, plaintiff filed an action against the Rorabaugh-Paxton Dry Goods Company for damages alleged to have been sustained in the way of losses in the operation of the tea room by reason of the fact that defendant had failed to cooperate with her to make the business of the tea room a success. This action appears to have been later dismissed. While that case was pending, and on July 20, the Rorabaugh-Paxton Dry Goods Company brought an action against this plaintiff to enjoin her from attempting further to operate the tea room on the ground she had broken the contract. A temporary restraining order was granted, and in response thereto the plaintiff herein, who was defendant in that case, ceased to operate the tea room. There appears to have been no further action taken in that case. Thereafter the plaintiff brought this action in two counts. The first set up her contract with the G. W. Newman Dry Goods Company, which company had sold its business to defendant, and alleged that the contract, although denominated a lease, was in fact a contract of employment, and that plaintiff was entitled to have it so construed; that the written contract was indefinite and obscure in using the language, "In this connection, said lessor agrees to cooperate in every manner to enable lessees to do so and to make the operation of said tea room a success," and alleged that the expression was written into the instrument for the purpose of expressing the mutual agreement and understanding between the parties, as follows: That the dry goods company, through its manager, told plaintiff, as a consideration for her entering into the contract, that they would not only furnish the rooms and equipment mentioned in the written contract, but would cooperate to the extent that they would see that plaintiff would lose no money by the venture contemplated by the contract. Plaintiff alleged that such was the mutual understanding of the parties and the construction given by them to the language of the contract.

The second count made the first a part of it and itemized in some detail the damages plaintiff thought she was entitled to recover, including the $290 she had paid for redecorating the rooms, and, among other things, alleged that the reasonable value of her services for the time she was conducting the business was $30 per week. The petition alleged a failure of success of the business and loss to plaintiff by reason of defendant's failure to coöperate to make the business a success, and alleged acts of defendant in connection with the business which tended to render it impossible for the business to be successfully conducted.

In its answer defendant denied liability, alleged if the business was not a financial success that situation resulted from the neglect and fault of plaintiff—and specifically in the insanitary condition of the premises—pleaded a prior adjudication of all matters between the parties by the former actions, and by cross petition claimed damages for the failure to return part of the equipment.

The evidence tended to show that in discussing the contract, at the time it was executed and before, plaintiff expressed some doubt to Mr. Scott, manager of the Newman Dry Goods Company, of the financial success of the enterprise, and particularly stated and made it clear to him that she was not in a position to sustain a financial loss. Mr. Scott assured her that there should be no reason for financial loss, that in fact the business should be profitable, and assured her, on behalf of the Newman Dry Goods Company, that its officers and employees would patronize the tea room, encourage others to do so, assist in having the civic bodies of the city have their luncheons and dinners there, and in obtaining other luncheons and dinners, that it would pay for the advertising deemed necessary, would advise in the purchase of provisions, arranging of menus, and generally in the management of the business, with a view of maintaining the high standard of the place and of its financially successful operation; and to embody their agreement with respect to those matters in the contract, this language was used: "In this connection," keeping the high standard of the place so it could retain the red seal, "said lessor"—the term used to designate the Newman Dry Goods Company in the contract—"agrees to coöperate in every manner to enable lessee"—the term used to designate this plaintiff in the contract—"to do so," that is, to so operate the tea room as to maintain the high standard of service, "and to make the operation of said tea room a success." Obviously this provision contained

two covenants with respect to coöperation: First, it was to be such as in every manner to enable this plaintiff to maintain the high standard of service; and, second, to make the operation of the tea room a success. The evidence tended to show that these general clauses were used instead of specifying in detail the things which would be done. There was evidence, further, that the Newman Dry Goods Company, prior to the sale of its business to the defendant herein, carried out that agreement; that its manager consulted with plaintiff frequently with respect to many details of the business and the manner in which it was conducted; that the officials and employees of the dry goods company patronized the place, and encouraged others to do so, and its manager assisted in having civic bodies and other groups have their luncheons and dinners there, and paid for advertising deemed advisable; but that soon after defendant purchased the business of the Newman Dry Goods Company and assumed its obligations such coöperation ceased, and in fact the attitude of the defendant became the opposite of coöperative, to the extent that it used the rooms of the tea room, or part of them, for business meetings of its employees, for the storage of merchandise, the sewing of carpets, and other storeroom purposes. The business dwindled away. While plaintiff had previously needed six waiters to take care of the trade one became sufficient. The result was a failure of the business and the bringing of the suits in May and July previously mentioned. On behalf of defendant there was evidence tending to show that by July, 1927, plaintiff had permitted the premises to become insanitary. All of this evidence was before the jury. The jury returned a verdict for plaintiff for $600, and itemized it as money advanced by plaintiff for redecorating, $290, and for lack of coöperation, $310.

Generally speaking, appellant complains that the trial court overruled its demurrer to plaintiff's evidence, and of rulings of the court in the admission of evidence, and of instructions given. Specifically, appellant complains of the rulings of the court in admitting evidence of what the parties understood and agreed upon with respect to the coöperation to maintain the high standard of service of the tea room and to make the business a success. The contention is that this evidence was inadmissible for the reason that it tended to vary the terms of a written contract. It is frequently stated in the brief there is no allegation in the petition that the language of the contract was ambiguous, or any other allegation that would justify

the admission of this evidence. These statements indicate counsel for appellant have overlooked the allegations of the petition previously quoted. There is a specific allegation that the language used "was indefinite and obscure" with respect to that matter, and further allegations of the understanding of the parties by the use of that language. Perhaps if no such allegations were made in the petition the language itself is such as to permit its explanation. There was no error of the court in this respect.

It is further argued that this defendant knew only what the contract recites, and hence could not be bound by promises or agreements between the parties not embodied therein. This argument overlooks the fact that the language of the contract places the duty to coöperate in general terms rather than stating the specific things which would be done. It necessarily includes the obligation that certain things were to be done. Defendant is not in a position to say that it did not know from reading the contract that specific things were to be done, if in doubt as to what, an inquiry would have disclosed. Certainly some of the things disclosed by the evidence tending to show opposition to the successful conduct of the business could not be justified under any interpretation of a duty to coöperate.

Appellant contends that the liabilities of the parties were determined by the prior litigation, and that the court erred in not so ruling. This contention cannot be sustained. The first action brought by the plaintiff herein, in May, 1927, was never tried. Indeed it is not clear issues were made up in it. In the action brought by the defendant herein in July, 1927, a temporary restraining order was obtained. The defendant in that case did file an answer, but later received permission and withdrew it. There was no final adjudication of the rights of the parties in the case. (See 34 C. J. 763; *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.,* 12 Kan. 127; *Dryden v. St. Jos. & D. C. Rld. Co.,* 23 Kan. 525; *Meyn v. Kansas City,* 91 Kan. 29, 136 Pac. 898.)

It is conceded there was a contract between the parties hereto, and that the same was broken. Each claims the other was responsible for breaking it, with resulting damages. The entire issue was tried out. No reason has been clearly pointed out why the judgment of the trial court should be disturbed. It is therefore affirmed.