280 P.2d 1070

**J. I. CASE COMPANY, a corporation, Plaintiff-Respondent,**

**v.**

**Charles F. McDONALD, Defendant-Appellant.**

No. 8112.

Supreme Court of Idaho.

March 1, 1955.

Rehearing Denied March 28, 1955.

S. T. Lowe and Kales E. Lowe, Thomas
H. Church, Burley, for appellant.

Richards, Haga & Eberle, Boise, for respondent.

TAYLOR, Chief Justice.

On February 14, 1953, the plaintiff (respondent) filed an action against the defendant (appellant) for a balance alleged to be due upon an account for merchandise. At the same time it procured the issuance of a writ of attachment upon an affidavit alleging "that the security originally securing payment of such indebtedness has * * * become valueless", and that the same is not now secured. April 10, 1953, the defendant moved the court to dissolve the attachment. The defendant was a dealer in farm machinery, buying from the plaintiff, machinery, attachments and parts for sale at retail at Burley and Rupert, Idaho.

On June 12, 1953, a hearing was had on the motion to dissolve. Upon this hearing defendant presented to the judge an affidavit in support of the motion, and the motion was amended to include the affidavit as a part of the basis thereof. Plaintiff was then given time to file counter-affidavits and the cause was continued. Defendant's affidavit sets forth a provision common to all the purchase order contracts executed by the parties on the occasion of each sale, as follows:

"Until full payment has been made therefor to Company in cash, goods purchased under this contract shall be resold by Dealer only in the ordinary course of trade at retail and the title to all of such goods until so sold, together with right of possession in the event of default, shall be and remain in the Company, and the proceeds of goods sold, whether in cash, notes, book accounts or other property, shall be deemed the property of Company and held in trust for it, subject to its order until full payment in cash shall be made to it for such goods, and Dealer expressly authorizes and empowers Company at any time to possess itself of the proceeds of any goods resold, and, upon its request, agrees to execute all necessary endorsements and assignments fully to vest Company with all such proceeds under the terms of this contract."

The affidavit then goes on to aver that prior to the commencement of the action the plaintiff repossessed certain merchandise, but there still remained in his possession merchandise, described in the affidavit, of a total value of $20,803.71, "title to which is held by the plaintiff as security for the payment of any indebtedness that might be due or owing from defendant to the plaintiff." Counter-affidavits by plaintiff's district manager and one of its attorneys were filed June 19, 1953. They aver in substance that all of the merchandise described in defendant's affidavit had been fully paid for and, therefore, the plaintiff had no right, title, interest or security therein; that prior to commencement of the action, at the time plaintiff repossessed certain merchandise held by defendant, the affiants, as its agents, made demand upon defendant for all merchandise, and proceeds

of merchandise, then on hand for which he had not fully paid; and defendant then told them the property which he turned to them at that time was all of the merchandise, or proceeds of merchandise, then remaining in his hands and for which he had not paid the plaintiff in full.

In rebuttal defendant McDonald made a second affidavit, filed August 8, 1953. In this affidavit he avers that during the period of his dealership, commencing in 1941, he made payments on his account with the plaintiff from time to time; that he never designated "any particular merchandise or machinery on which the payments were to be applied, excepting when he sold a certain large item like a tractor or other similar equipment"; and that payments made by him during the last year preceding the commencement of the action were credited on his general account with the plaintiff. He also denies that at the time of the repossession he represented or told plaintiff's agents the merchandise then repossessed was all of the merchandise, or proceeds of merchandise, which he had on hand, for which he had not made full payment.

On August 8, 1953, the date on which defendant's rebuttal affidavit was filed, the district judge made an order, filed August 10, dissolving the attachment. This order was made without further argument or presentation by counsel.

Some time later (date not shown) plaintiff filed a motion for reconsideration of defendant's motion to dissolve the attachment. Hearing upon this motion was had on September 3, 1953. At this hearing counsel for the respective parties placed conflicting constructions upon the affidavits theretofore considered by the court. Counsel for defendant at that time urged the court to consider the provisions of a general contract entered into annually by the parties, which he had discovered subsequently to the order of August 8, and which had not been previously called to the attention of the court. He contended that by the terms of this general contract all merchandise, and proceeds of merchandise, purchased from plaintiff, which he had on hand, remained the property of the plaintiff and subject to its order, until his account was paid in full.

The court ordered a "reconsideration or rehearing", which was had October 26 and 27, 1953. When the cause was called on October 26, counsel for defendant then objected to the reconsideration on the ground:

"First: That an order dissolving an attachment is an appealable order.

"Second: That the time for an appeal from the order dissolving the attachment has now expired and the same has become final, and the Court would have no jurisdiction to reconsider or vacate the same."

This objection was overruled. The court then heard testimony of witnesses on both sides. On January 7, 1954, the court made its order vacating the order of August 8, 1953.

This appeal is from the order of January 7, 1954. In this last order the court recites:

"* * * it appearing to the court that said order of August 8, 1953, had been made through a misapprehension of the court and by error, omission, oversight and misunderstanding and that the facts as they really existed were that plaintiff at the time of the issuance of said writ of attachment had no security by mortgage, lien or pledge and that the affidavit upon which said writ was issued was not false and that said order should be vacated and set aside, * * *."

The first question presented is the power of the district court to reconsider and vacate its order dissolving the attachment.

 Appellant urges that the order of August 8th, being appealable and the time for appeal having expired prior to the rehearing on October 26th, § 13–201, I.C., the order had become final and the court was without further jurisdiction in the premises. The motion to reconsider had been acted upon and granted by the court on September 3rd, when it "ordered re-consideration or re-hearing." This was before the time for appeal from the first order had expired. Whether the court could entertain such a motion made after time for appeal, is not before us.

Appellant relies upon § 13–101, I.C., which provides:

"A judgment or order, in a civil action, except when expressly made final,
may be reviewed as prescribed in this code, and not otherwise."

He argues that the "prescribed" "review" of an order such as here involved, is by way of the appeal provided for in § 13–201, I.C., and that appeal is the exclusive remedy. We think the "review" referred to in § 13–101, I.C., is a review by an appellate tribunal. § 13–219, I.C.; Weehawken Wharf Co. v. Knickerbocker Coal Co., 25 Misc. 309, 54 N.Y.S. 566; 77 C.J.S. page 337; 5 C.J.S., Appeal and Error, § 1453. "Rehearing" or "reconsideration" as used here properly refers to a reconsideration by the same court by which the original determination was made. § 1–1617, I.C.; Guernsey v. First National Bank, 63 Kan. 203, 65 P. 250; Bass v. Baltimore & O. Terminal R. Co., 7 Cir., 142 F.2d 779; In re Friedman, 123 Misc. 809, 206 N.Y.S. 410; Jones v. Thompson, 8 Cir., 128 F.2d 888; 76 C.J.S. page 106; Lake v. State, 100 Fla. 373, 129 So. 827; Citizens Auto. Inter-Insurance Exch. v. Andrus, 70 Idaho 114, 212 P.2d 406. "Review" is limited to the record made in the lower court. A rehearing or reconsideration in the trial court usually involves new or additional facts, and a more comprehensive presentation of both law and fact. Indeed, the chief virtue of a reconsideration is to obtain a full and complete presentation of all available facts, so that the truth may be ascertained, and justice done, as nearly as may be. No additional record or new facts may be presented upon an appeal. Hence, in such cases appeal affords no rem-

edy. In addition a reconsideration by the trial court will tend to reduce the number of appeals, with the attendant expense and delay. Moreover, § 13–101, I.C. must be construed in harmony with § 1–1603, subsection 8 I.C., which provides that every court has power "To amend and control its process and orders, so as to make them conformable to law and justice."

In Hirsch v. Hirsch, 74 Cal.App.2d 391, 168 P.2d 770, 771, the court, considering section 473 of the Code of Civil Procedure, in part the same as our § 5–905, I.C., said the statute was not intended "to circumscribe the inherent powers of the courts but rather to enlarge such powers." In Occidental Life Ins. Co. v. Niendorf, 55 Idaho 521, 44 P.2d 1099, 1102, this court recognized the common law power of a "court to modify, alter, or vacate its judgments at any time during the term at which they were entered", and held nevertheless that "in so far as, the manner and method of exercising these powers has been defined and prescribed by statute, the statutory method and remedy is exclusive." The statute referred to was § 5–905, I.C. The court went on to say the showing required for relief under the statute could not be dispensed with because not required at common law. The converse must also be recognized, that where the statute or rule does not prescribe the procedure, the common law or other appropriate method will be followed in the exercise of inherent judicial power. §§ 73–102, 73–116, 1–1622, I.C.;

Cox v. St. Anthony Bank & Trust Co., 41 Idaho 776, 242 P. 785; Sprouse v. Magee, 46 Idaho 622, 269 P. 993; Hancock v. Halliday, 65 Idaho 645, at page 665, 150 P.2d 137, 154 A.L.R. 295.

Dellwo v. Petersen, 34 Idaho 697, 203 P. 472, 473, involved the power of the court to entertain a renewed motion to vacate a judgment of dismissal. The court said:

"A renewal motion may be filed with the permission of the court. It involves a question of practice, and the decision of the first motion is not necessarily res adjudicata. As was held in Belmont v. Erie Ry. Co., 52 Barb. (N.Y.) 637: 'It is well settled that whatever can be done upon motion to the court may, by the court, upon further motion by either party, be altered, modified or wholly undone.'

"The rule followed in many jurisdictions is that a new motion for the same relief is a matter of right, and may be made without leave of court, when the motion is made upon a new state of facts, but, when made upon the same state of facts as presented upon a previous motion, that the hearing of such new motion is discretionary with the court, and leave must be obtained to hear the same. While in other jurisdictions it is held that it is within the sound discretion of the court to hear a second motion not upon the same state of facts, and before such second mo-

tion may be heard leave of court must be obtained."

In Belmont v. Erie Ry. Co., cited by Justice Budge in Dellwo v. Petersen, supra, Justice Cardozo, referring to the remedy by appeal, said:

"I call it a most important power, because, if the position assumed be true, that when a motion has been once heard, and decided, there is no remedy against the order made, except that which an appeal will afford, then it will be found that the most flagrant injustice may often happen, without the possibility of the sufferer obtaining any redress. For instance, suppose that upon the papers presented to the court the decision at special term was clearly right, and must be affirmed on appeal, and yet there were facts which, had the defeated party known them, or had he had an opportunity of exhibiting them to the court, would have inevitably produced a different result. Can it be that he is remediless? An appeal will not aid him, for that must be heard upon the papers on which the motion was decided, and I am supposing the case of a motion correctly decided upon the papers as they stood before the special term. * * * 'A grievous wrong may be committed by some misapprehension or inadvertence of the judge, for which there would be no redress, if this power did not exist.' It is not necessary to multiply instances by way of illustrating the monstrous effects which would flow from the doctrine asserted by the plaintiffs. To guard against such results, the courts very early laid down the rule that the principle of res adjudicata, which prevents a matter being twice litigated, has no application to a mere interlocutory motion. * * *.

"But so that mere litigiousness should not be encouraged or permitted, the practice of the courts, has been established to be that after a motion has once been fully heard and decided, it should not be revived again, except upon leave of the court first had and obtained, or unless a different state of facts arose subsequently to the first determination. When a different state of facts has arisen since the first motion, a new motion, based upon these facts, may be made as a matter of right. * * * But when that is not the ground, leave must be obtained from the court, which may grant it either upon additional facts and papers, or, though of course more rarely done, upon the same papers originally before the court."

Sections 1–1617 and 1–1618, I.C. are obviously intended to assist the courts in safeguarding litigants against litigious practice.

The general rule applicable here is set out in 60 C.J.S., Motions and Orders, § 62, as follows:

"In the exercise of this power, a court, while it still retains jurisdiction over the cause in which the order was made, may, for sufficient cause shown, amend, correct, resettle, modify, or vacate, as the case may be, an order previously made and entered on motion in the progress of the cause or proceeding; and a statute empowering a court to modify its orders should be liberally construed."

■ An attachment proceeding affords a provisional remedy, collateral to the main action. Potlatch Lumber Co. v. Runkel, 16 Idaho 192, 101 P. 396, 23 L.R.A.,N.S., 536; First Nat. Bank of Logan, Utah v. Collins, 51 Idaho 689, 9 P.2d 802; Finn v. Mehrbach, Mun.Ct., 65 N.Y.S. 250; Brandt v. Davidson, Sup., 48 N.Y.S.2d 917; Lowe v. Swinehart Tire & Rubber Co., D.C., 211 F. 165. The motion for reconsideration was made during the course of the proceedings, and not after final judgment. In Wyllie v. Kent, 28 Idaho 16, 152 P. 194, and in Lawrence v. Corbeille, 28 Idaho 329, 154 P. 495, final judgment was involved.

■ It is recognized that, in exercising its discretion on an application for a rehearing, the court must have regard to any legitimate rights acquired under the original order, or any such rights which may be affected by the vacation or modification of such an order. Generally, such an application should be denied, or, upon the rehearing, relief should be denied where such rights cannot otherwise be protected. In this case the order appealed from expressly provides:

"* * * That rights, if any acquired in any of the attached property since said order of August 8, 1953, to the date hereof, shall not be prejudiced by this order."

Appellant urges upon us the rule followed in California, citing Holtum v. Greif, 144 Cal. 521, 78 P. 11; United Railroads of San Francisco v. Superior Court, 170 Cal. 755, 151 P. 129; Eisenberg v. Superior Court, 193 Cal. 575, 226 P. 617; Stevens v. Superior Court, 7 Cal.2d 110, 59 P.2d 988; Key System Transit Lines v. Superior Court, 36 Cal.2d 184, 222 P.2d 867, 870; Maxwell v. Perkins, 116 Cal.App.2d 752, 255 P.2d 10, 12. The rule there appears to be that where the trial court has made an order after notice and hearing, it may correct clerical errors, or errors occasioned by misapprehension or inadvertence or mistake of fact, but has no jurisdiction to correct a "judicial error." A reading of Harth v. Ten Eyck, 16 Cal.2d 829, 108 P.2d 675, and People v. Eggers, 30 Cal.2d 676, 185 P.2d 1, would indicate that the rule has not been strictly adhered to in that state. From Key System Transit Lines v. Superior Court, supra, it would appear that the rule has caused a division among the justices of the supreme court of that state. Referring to the policy of

the law requiring finality of judgment and orders, the court said:

"In giving effect to that policy appellate courts have generally refrained from interfering on jurisdictional grounds with the trial court's reconsideration of a discretionary order not based on the merits of the litigation. * * *

"This court has also recognized the power of the trial court independently of statute to set aside a default judgment entered through the court's inadvertence. * * * In 1 Freeman on Judgments (5th Ed.) p. 432, it is said that where the court is deceived or is laboring under a mistake or misapprehension as to the state of the record or as to the existence of extrinsic facts upon which its action is predicated, it has inherent power to vacate a judgment which would not otherwise have been rendered." Key System Transit Lines v. Superior Court, 222 P.2d 867, 869.

The strict application of the rule in that state reached a classic absurdity in Maxwell v. Perkins, 116 Cal.App.2d 752, 255 P.2d 10. In that case it appears the superior court judge granted a motion for change of venue on November 19th, after which a decision by the supreme court rendered that ruling erroneous. By minute order on November 27th, the trial judge undertook to correct the error by vacating the original order. The district court of appeals held the trial court's jurisdiction was exhausted when it entered its first order, and the error being a judicial error could not be corrected except upon appeal. Such a rule needs no further comment.

Again referring to Harth v. Ten Eyck, supra, we observe it is there held the fact that the order (dismissing the action with prejudice as to one defendant) was appealable, does not make appeal the exclusive remedy. Guernsey v. First Nat. Bank, 63 Kan. 203, 65 P. 250; 42 C.J., Motions & Orders, § 276, p. 558; 60 C.J.S., Motions and Orders, §§ 49, 62 e. This rule was tacitly recognized by us in Citizens Automobile Inter-Insurance Exch. v. Andrus, 70 Idaho 114, 212 P.2d 406. In Specialty Sales v. Graf, 73 Idaho 113, 245 P.2d 820, 822, we recognized the jurisdiction of the trial court to reconsider and reverse its ruling upon a demurrer, "if convinced it was erroneous". See cases there cited.

■ Our conclusion that the trial court had jurisdiction to reconsider its order dissolving the attachment is also sustained by the following authorities: Johnston v. Brown, 115 Cal. 694, 47 P. 686; Gay v. Gay, 146 Cal. 237, 79 P. 885; Lawson v. Lawson, 15 Cal.App. 496, 115 P. 461, 464; Ray v. Rorabaugh-Paxton Dry Goods Co., 134 Kan. 413, 7 P.2d 76; Burbank v. Continental Life Ins. Co., 2 Cal.App.2d 664, 38 P.2d 451; Bryant v. Superior Court, 16 Cal.App.2d 556, 61 P.2d 483; Montague v. State, 184 Okl. 574, 89 P.2d 283; Bunger

v. Rogers, 188 Okl. 620, 112 P.2d 361; Imperial Beverage Co. v. Superior Court, 24 Cal.2d 627, 150 P.2d 881; McKinney v. Northwest Tractor & Eq. Co., 41 Wash.2d 372, 249 P.2d 401; Ford v. Doyle, 44 Cal. 635; Kenney v. Kelleher, 63 Cal. 442; 15 Cal.Jur., Judgments, § 177, p. 112; 18 Cal. Jur., Motions & Orders, § 19, p. 667; Hopkins v. Crantz, 334 Mich. 300, 54 N.W.2d 671; Riggs v. Pursell, 1878, 74 N.Y. 370; Goldenberg v. Adler, App.Div., 123 N.Y.S. 387; In re Friedman, 123 Misc. 809, 206 N.Y.S. 410; People v. Dellamura, Co.Ct., 28 N.Y.S.2d 584; Jason v. Abramowitz, Sup., 75 N.Y.S.2d 781; Bannon v. Bannon, 270 N.Y. 484, 1 N.E.2d 975, 105 A.L.R. 1401; Rager v. McCloskey, 305 N.Y. 75, 111 N.E.2d 214; Hill v. U. S. ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283; Denny v. Bennett, 128 U.S. 489, 9 S.Ct. 134, 32 L.Ed. 491; 60 C.J.S., Motions and Orders, §§ 40 b, 62(2) (3).

The remaining question presented is the sufficiency of the evidence to sustain the trial court's order of January 7th, vacating its first order and reinstating the attachment. As noted, the court heard evidence of witnesses on both sides at great length on October 26th and 27th. We have carefully examined this evidence. It is conflicting on the issue as to whether at the time of the attachment the defendant had on hand tangible proceeds of merchandise sold by him and for which he had not fully paid plaintiff. There was evidence of some property which he had acquired as "trade-ins" on the sale of similar items in 1952. However, the evidence would support a finding by the court that demand was made upon him before action was brought for a surrender of all goods, and proceeds, in or upon which the plaintiff had any right, title or lien; that in response thereto he surrendered certain property listed and described in plaintiff's exhibit "F", and that he at that time represented that to be all of such property or proceeds he then held.

■ As to defendant's contention that by the terms of the general contract, all merchandise, and proceeds of merchandise, purchased from the plaintiff, which he had on hand, remained the property of the plaintiff and subject to its order until his account was paid in full, it appears that neither of the parties during the years of their dealings recognized or invoked this provision. Instead, they recognized and relied upon the provisions in the purchase order contracts to the effect that the specific merchandise, and its proceeds, remained the property of the plaintiff until those specific items were paid for. This was the construction placed upon the contract by the parties themselves. We further note that the so-called general contract expired at the end of each season and was replaced by a new one each year. Strictly construed, this would mean that merchandise held over from the previous year would not be subject to its terms. Except as to a few items, the evidence does not show in what year

the property on hand was acquired by the defendant.

The record is sufficient to sustain the court's order reinstating the attachment and it is, accordingly, affirmed.

Costs to respondent.

KEETON, PORTER, ANDERSON and SMITH, JJ., concur.