**AMERICAN ELECTRONIC LABORA-
TORIES, INC., Plaintiff,**

**v.**

**Paul S. DOPP, Defendant.**

**Civ. A. No. 4078.**

United States District Court,
D. Delaware.

Jan. 19, 1972.

See also D.C., 334 F.Supp. 339.

S. Samuel Arsht and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

A. Richard Barros, of Brown, Shiels & Barros, Dover, Del., and Arnold I. Roth and Joel W. Sternman, of Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

In this action brought by American Electronic Laboratories, Inc. ("AEL"), a Pennsylvania corporation, AEL seeks to recover damages in the sum of $1,510,950 from Paul S. Dopp ("Dopp"), a New Jersey citizen, for breach of contract. The complaint charges that Dopp failed to perform a contract in which he agreed to purchase from AEL 143,900 shares of Series B Voting Participating Convertible Preferred Stock of Butler Aviation International, Inc. ("Butler").

The case was removed to this Court pursuant to 28 U.S.C. § 1441(a).

Two motions are presently before the Court. First, Dopp has moved for an order directing the Clerk to pay over to him the sum of $3,050.49, which is on deposit in the Registry of this Court. Second, AEL has moved for an order to reinstate the Mesne Writ of Foreign Attachment with respect to 15,000 shares of Butler stock which were previously released from the attachment by Court order on May 28, 1971. (Docket Item 18). These motions will be discussed separately.

I. *Disposition of $3,050.49 Deposited In Court By National Newark and Essex Bank*

When this case was originally commenced in the Superior Court of the State of Delaware and before it was removed to this Court, a large number of shares of Butler stock standing in the name of Dopp was attached on February 18, 1971 by a Mesne Writ of Foreign Attachment issued pursuant to 10 Del.C. § 3506 and Rule 4(b), Rules of Delaware Superior Court, Del.C.Ann. (Docket Item 1). On May 28, 1971, National Newark and Essex Bank (the "Bank") moved, pursuant to Rule 24, F.R.Civ.P., to intervene in this action. The Bank's moving papers stated (1) that on March 13, 1970 the Bank had made a loan to Dopp for $75,000, which was collaterally secured by a pledge of 15,000 shares of Butler common stock, (2) that of the stock pledged, 10,000 shares, represented by certificate numbers 145 to 154 inclusive, were in the name of Dopp and 5,000 shares, represented by certificate numbers NU 251 to 255, inclusive, were in the name of Dopp & Company, Inc., (3) that the loan was due and payable on April 13, 1970, that only $7,500 had been paid on the loan by that date and that its pledge continued on all of the shares so pledged, (4) that the Bank's pledge was entitled to priority over AEL's lien secured by the Mesne Writ of Foreign Attachment, and (5) that the Bank should be permitted to intervene to seek the release of AEL's attachment. (Docket Item 16).

On May 28, 1971, the Court entered a consent order [1] which provided in part as follows:

"Ordered, that National Newark and Essex Bank be permitted to intervene for purposes of vacating the said attachment as to 15,000 shares of common stock of Butler Aviation International, Inc., pledged to National Newark and Essex Bank, and that the

---

[1]. The order was consented to by the attorney for AEL, the plaintiff.

plaintiff's Mesne Writ of Foreign Attachment be, and it hereby is, vacated as to the shares of common stock of Butler Aviation International, Inc., represented by certificates numbered 145 to 154, inclusive, standing in the name of Paul S. Dopp, and by certificates numbered NU 251 to 255, inclusive, standing in the name of Dopp & Company, Inc.

Further Ordered, that Butler Aviation International, Inc., and the transfer agent or agents for the stock of said corporation are hereby authorized to recognize the transfer of said 15,-000 shares of common stock of Butler Aviation International, Inc." (Docket Item 18).

Thereafter the Bank sold the 15,000 collateralized Butler shares under its pledge and after applying the sale proceeds to Dopp's prior indebtedness, the Bank had a surplus of $3,050.49. Dopp then made a claim upon the Bank for this surplus. AEL also demanded that the Bank deposit the surplus fund into Court pursuant to an agreement between the Bank and AEL made on May 25, 1970 under which, in order to obtain AEL's consent to the vacation of the Writ of Foreign Attachment with respect to these shares, the Bank agreed to deposit any surplus funds into the Registry of this Court. (Docket Item 30). No disclosure of this agreement was made by AEL either to Dopp or the Court until October 16, 1971. (Docket Item 39).

■ Dopp claims that the surplus funds should be paid to him because this Court's order of May 28, 1971 entered with the AEL's consent unconditionally released the 15,000 shares from the lien of the Mesne Writ of Foreign Attachment. The Court agrees.

The order of May 28, 1971, which was consented to by AEL, effectively and unqualifiedly vacated the Mesne Writ of Attachment with respect to the 15,000 shares in question. It cannot be revived as to the proceeds received from the sale of those shares, simply by the Bank paying the surplus proceeds into Court. No statutory or decisional authority has been cited to this Court which would authorize the continuation or restoration of an attachment lien which had theretofore been validly released in the absence of fraud or misrepresentation in obtaining the release.

AEL contends that the surplus proceeds should be retained by the Court because of the previously undisclosed arrangement between AEL and the Bank whereby the Bank agreed to deposit the surplus funds into Court. Dopp, however, was not a party to this undisclosed arrangement and his rights cannot be prejudiced by it particularly when the consent order of May 28, 1971 unconditionally vacated the attachment with respect to these shares.

Accordingly, the surplus proceeds of $3,050.49 in the Registry of the Court should be paid to Dopp by the Clerk of this Court.

## II. *Reinstatement Of The Mesne Writ of Foreign Attachment*

AEL claims that the Mesne Writ of Foreign Attachment, covering the 15,000 shares of Butler common stock held in the name of Dopp, vacated by this Court's order of May 28, 1971, and consented to by the attorneys for AEL should be reinstated.

AEL advances two arguments in support of its motion.

■ AEL first argues that the Bank's sale to Dopp of the 15,000 shares of Butler stock which had been previously released from the lien of the attachment was not a bona fide sale but was a "sham transaction" that amounted to a fraud upon AEL and the Court. In order for AEL to prevail on this contention, it must be demonstrated that: (1) the Court was misled in vacating the attachment, (2) that the Court did not intend that Dopp would thereafter acquire the stock following its release from the lien of the attachment, and (3) that

Dopp's purported repurchase of the stock by a sales transaction is simply a redemption under New Jersey's Uniform Commercial Code, N.J.S.A. 12A:9–506.

After due deliberation, the Court concludes that AEL has failed to prove these contentions or that they are material to the question involved.

■ The order of May 28, 1971, sought by the Bank and consented to by AEL "effectively and unqualifiedly vacated the Mesne Writ of Attachment" with respect to the 15,000 shares in issue. There were no reservations in the Court's order which restricted the Bank's manner of disposal of the stock. Had AEL desired any such limitations, it could have requested the Court to impose restrictions in its order; it did not. Thus, AEL cannot now request that the prior unqualified order releasing the stock from the attachment be retroactively modified to restrict the Bank's handling and disposition of its collateral. The attachment was completely vacated from that date, and those shares thereafter were no longer subject to the Court's control by virtue of the original attachment. Finding that the Bank was free to dispose of the shares unrestricted in any manner by the prior attachment, it is unnecessary to determine whether Dopp thereafter obtained the shares by a sale at a price $3,050.49 in excess of his loan or whether the transaction was a redemption under N.J.S.A. 12A:9–506.[2] The form of the transaction is immaterial.

■ AEL's second argument appeals to the Court's equitable conscience to correct the situation which AEL claims is fundamentally unfair. AEL asserts that Dopp ingeniously circumvented the intent of the Court's May 28, 1971 order.[3] In support of its position, AEL relies on two cases, J. I. Case Company v. McDonald, 76 Idaho 223, 280 P.2d 1070 (1955); Langdell v. Eastern Basket & Veneer Co., 78 N.H. 243, 99 A. 90 (1916), and the following quotation:

"It has been held proper for a court, when convinced of its error in quashing an attachment, to set aside its order doing so, and thereby to reinstate the same at the same term at which it was rendered, or even when final judgment has been rendered. . . ." 7 C.J.S. Attachment § 480 (1937).

In this case, however, the Court in vacating the attachment was not misled by the Bank or Dopp. In fact, Dopp did not participate in the proceedings for the release of the shares when the Bank moved for an order unqualifiedly releasing the stock from the lien of the attachment and AEL consented thereto. When the order was entered, no representation was made by any of the parties nor was the motive or purpose of the release considered by the Court. The Court was simply asked to release the stock from the lien of the attachment. When AEL consented, that order was granted. There was no misapprehension on the Court's part as to the effect of that order when entered.

AEL's motion requesting an order to reinstate the attachment will be denied.

Submit order in accordance with this opinion.

---

2. That section reads in part as follows: "at any time before the secured party has disposed of collateral or entered into a contract for its disposition . . . the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by rendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party. . . ."

3. On June 29, 1971, Dopp purchased the 15,000 shares for $73,025, or $4.875 per share, the closing price that day for Butler stock on the American Stock Exchange. (Dopp Aff., p. 3, Docket Item 51).