EMPLOYERS' LIABILITY ASSUR. CORPORATION et al. v. ACCIDENT & CASUALTY INS. CO. OF WINTERTHUR, SWITZERLAND, et al.

No. 9319.

Circuit Court of Appeals, Sixth Circuit.

April 6, 1943.

Clarence L. Becker, of Akron, Ohio (Charles F. Scanlon and Clarence L. Becker, both of Akron, Ohio, on the brief), for appellants.

Charles Belsan, of Cleveland, Ohio (Davis & Young, Charles A. Chapla, and Charles Belsan, all of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

Out of an automobile collision in Ohio on March 26, 1940, grows the present controversy, between two insurers in respect to the coverage of their contracts. It was initiated by the appellee in a suit for a declaratory judgment absolving it from liability and responded to by the appellant, as intervenor, with prayer for a declaration of primary liability on the part of the appellee.

William W. Leopold was the owner and driver of the car allegedly responsible for the collision. At the time of the accident he was employed as General Superintendent of the Superior Sheet Steel Corporation and was driving his automobile in its business. As a result of the accident, Leopold was killed, and Conrath, Kennedy, and Fitch, occupants of the colliding car, were injured. The injured persons brought suits in the state courts against Leopold's estate and the Steel Corporation for personal injuries and property damage sustained in the collision. At the time of the accident Leopold's car was insured against liability for injury to persons or property, by the Accident and Casualty Company, and under Ohio law the insurer may be subjected to judgment against the owner. The Steel Company was likewise insured by a liability insurance policy in the Employers' Liability Assurance Corporation, and attached to its policy was what is known as a "non-ownership" endorsement, providing that the insurer would pay on behalf of the assured, any liability imposed upon the assured for damages arising from the use of automobiles not owned by it, such "non-ownership" insurance, however, to be but excess insurance over any other valid and collectible insurance available to the assured.

Leopold's insurer, the Accident Company, sought a declaration of non-liability by reason of terms and conditions in its policy set forth in the margin.[1] It must be noted, however, that Item 7, which provides that the automobile insured under the policy, should be covered when used for pleasure and business, is not fully printed, the phrase "pleasure and business" being written therein with typewriter. Appended to Item 7C is a declared table of avocations, businesses, occupations, and professions in pursuit of which the car may be used. It includes engineers and office workers, but does not include steel companies. It is therefore contended by the Accident Company that Leopold did not use the automobile in pursuance of any occupation declared in its policy, that neither Leopold nor the Steel Company had any coverage under it while the automobile was used in his business as Superintendent of the Steel Company, that the Steel Company was not

[1] "Item 7. The purposes for which any automobile insured under this policy shall be used (refer to Condition E for definition of purposes of use), are as follows: pleasure and business.

"A. It is Declared that this is a limited policy issued in recognition of the preferred classes of Named Insured to which its Coverage is Limited, and of the Preferred Uses to which any automobile covered hereunder is restricted.

"B. It is Declared that any automobile covered hereunder may be used for Family and Personal Use, Pleasure, and in going to and from Work, and in any Avocation, Business, Occupation, or Profession named in, and as qualified by the footnotes in, the herein Table, but shall not be otherwise used either by the Named Insured, or by any Relative by Blood or Marriage, Member of the Household, Employer or Employee, of the Named Insured."

engaged in any business within the scope of Item 7C, that it was not covered by Condition C, the so-called "omnibus clause" of the policy, which is printed in the margin,[2] and lastly that the policy does not protect the Steel Company because the latter had, at the time of the collision, other valid collectible insurance.

The evidence was all stipulated. It discloses that at the time of the accident Leopold was en route to Niles, Ohio, to examine machinery in which his employer was interested, with a view to installing it in its own plant. The Steel Company was engaged in the manufacture of sheets from steel purchased in bar form, heated and rolled, and subjected to a special operation by galvanizing. Leopold had originally been employed by the Steel Company in 1920, was at one time a heater in the plant, had become acquainted with the technical workings of the sheet mill, and had worked up to the position of Superintendent. He was not, however, a graduate or licensed engineer. The Steel Company had a combustion and furnace engineer who served under Leopold's direction, and was with him on the trip to Niles. Leopold maintained an office at the Steel Corporation's plant, in which he spent about 45 or 50% of his working time. The remainder of his time was spent in and about the plant supervising its manufacturing operations and the making and installation of equipment. His primary duties were to see that the plant ran according to schedule. Upon occasions he would travel in his own automobile to inspect new equipment, or equipment that other companies had in which his employer might be interested, and upon such trips he would be compensated for the use of his automobile upon a mileage basis.

The District Court held that while the policy purported to cover Leopold's automobile when used for pleasure and business, there was nothing therein to indicate that the term "business" meant anything other than the insured's business, that the contract may not be construed as coverage for the business of the Steel Corporation for which it had bought its own insurance, and that the oral testimony was not sufficiently

clear and convincing to vary or expand the terms of the policy. It was, therefore, its conclusion that Leopold was not driving his automobile for pleasure or personal business at the time of the accident, but was driving it on an errand for his employer, and that such errand did not constitute office work or engineering or come within any of the other preferred uses set forth in the policy. It held that none of the defendants were entitled to any of the benefits provided for in the Accident Company's policy. Since the Employers' policy protected the Steel Company to the extent of excess over any other available insurance, and Leopold's policy in the Accident Company was not such insurance, it held that if the Steel Company were made liable for the damages which Conrath, Fitch, and Kennedy suffered, then the Employers' Corporation was obligated to indemnify it in accordance with the terms of its policy without the benefit of any protection afforded to Leopold or the Steel Company by the Accident Company's policy.

■ We are unable to take so narrow a view of the liability of the Accident Company under its contract. Leopold's business, vocation, or profession upon which he was engaged, was that of Superintendent for the Steel Company. In the common acceptance of the term, superintendency was his business. True, it was also the business of the Steel Company, but that did not prevent it being Leopold's business. One's business or vocation is the activity upon which he spends the major portion of his time and out of which he makes his living. True, an employee may have some private affairs of his own, but the policy which purported to protect him when operating his car on pleasure and business was not, in terms, restricted to merely incidental affairs of his own not concerned with his major occupation. Government, State, and Municipal officials are included in the preferred classification under Item 7C. Can it then be inferred that they are not using their cars in their own business but in that of their employers when traveling officially? The limitation "Except in outside law enforcing duties," compels negative re-

[2] "C. 'Insured' Defined. The unqualified word 'Insured' when used in this policy, but only when applicable to coverages I and II, includes not only the Named Insured but also any other person while using the automobile and any other person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure' or 'business' or both, or 'commercial,' each as defined herein, and provided further that the actual use is with the express permission of the Named Insured."

sponse. To restrict the coverage of the policy by construction to business unconnected with his employment, would doubtless have left Leopold with little, if any, protection for the operation of his car in a business use.

▮ Nor are we in agreement with the decision below that Leopold's vocation was not that of engineer, or that at the time of the accident his errand did not constitute engineering and so failed to come within any of the preferred uses set forth in the policy. The appellee concedes that Leopold might have had some of the skill or knowledge of an engineer which undoubtedly proved helpful to him in his employment, but that the record adduced at the trial discloses that Leopold had never been licensed to practice the profession of engineering in the State of Ohio and so fails to sustain any claim that he was an engineer. The term "engineer" is not one of such limited connotation. In common parlance practical engineers, as well as graduate or licensed engineers, are included in the designation of persons as engineers. Webster defines "engineer" as "one versed in or who follows as a calling or profession any branch of engineering," and "engineering" in its modern and extended sense, as "the art and science by which the mechanical properties of matter are made useful to man in structures and machines." It is doubtful that the employee of an enterprise such as that of the Sheet Steel Company could rise to the position of General Superintendent without such practical knowledge of its manufacturing and mechanical processes as would qualify him as a practical engineer in the industry in which he was engaged. Moreover, at the time of the accident he was on a journey to inspect mechanical equipment for possible use in the steel industry. It was, in a true sense, travel of an expert versed in steel making who was expected to exercise a trained engineering judgment on the availability of mechanism he was called upon to inspect.

We do not overlook the fact that the Accident Company's policy here involved was a preferred risk policy written at a premium commensurate with the hazard. Analysis of the permissible occupations discloses a pattern that includes within it persons of intelligence and trained judgment. Within the scope of the preferences, as well as within their letter reasonably interpreted, Leopold came. Since he was covered by the Accident Company's policy it was

"other collectible insurance" and the Steel Company's insurer is liable only for excess thereover in the event of judgment against his estate or against the Steel Company.

Judgment reversed and the cause remanded for a decree in conformity herewith.