No. 16,303.

CITY AND COUNTY OF DENVER ET AL. *v.* GUSHURST, DOING
BUSINESS AS AMERICAN SHUFFLEBOARD SALES COMPANY
OF DENVER.
(210 P. [2d] 616)

Decided September 26, 1949.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, Mr.
TY R. WILLIAMS, for plaintiffs in error.

Mr. CHAS. A. HASKELL, Mr. RALPH E. CRANDELL, Mr.

ROBERT E. HOLLAND, Mr. GEORGE J. STEMMLER, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

FRED W. GUSHURST, JR., to whom we herein refer as plaintiff or by name, was, at the time of the commencement of this action, engaged in selling, leasing, installing and operating table shuffleboards, which are described in the pleadings as being three feet wide, three feet high, and twenty-two feet long. The game is played by two or more persons who alternately propel weighted discs from one end of the table to the other by force of hand, the score of each participant depending upon the position at which the discs come to rest. The game is not one of chance, nor is it coin-operated, but requires some degree of skill, and customers who play it are charged for the use of the shuffleboards either at an hourly rate or at a fixed fee per person per game, which is collected by the licensee or owner of the establishment.

Plaintiff alleges that plaintiff in error City and County of Denver, and certain of its officers, herein called defendants, have refused to permit the installation and operation of such shuffleboards in restaurants and hotels having licenses to sell intoxicating liquor by the drink, upon the ground that the operation of shuffleboards in such establishments is prohibited by the liquor code.

Gushurst, for himself and on behalf of others similarly situated, instituted this action under rule 23 (a) (3), R.C.P. Colo., to enjoin defendants from interfering with their business. To review a judgment in plaintiff's favor defendants have sued out a writ of error.

The case was tried upon an agreed statement of facts, and but one question is here presented for our determination, namely, Is the operation of shuffleboards in

restaurants having licenses to sell intoxicating liquor by the drink with meals, prohibited by the liquor code?

In order to obtain a proper understanding of the issues presented, the following constitutional and statutory provisions must be considered.

Article XXII of the Constitution provides: "On the thirtieth day of June, 1933, all statutory laws of the state of Colorado heretofore enacted concerning or relating to intoxicating liquors shall become void and of no effect; and from and after July 1, 1933, the manufacture, sale and distribution of all intoxicating liquors, wholly within the state of Colorado, shall, subject to the Constitution and laws of the United States, be performed exclusively by or through such agencies and under such regulations as may hereafter be provided by statutory laws of the State of Colorado; but no such laws shall ever authorize the establishment or maintenance of any saloon."

Pursuant to the above quoted article the Liquor Code of 1935, now known as article 2, chapter 89, '35 C.S.A., was adopted containing the following applicable provisions: Section 15. "This article shall be deemed an exercise of the police powers of the state for the protection of the economic and social welfare, the health and peace and morals of the people of this state, but no provisions of this article shall ever be construed so as to authorize the establishment or maintenance of any saloon." Section 17 (e) provides that it shall be unlawful: "To sell malt, vinous or spirituous liquors in a place where the same is to be consumed, unless such place be a hotel, restaurant or club as defined by this article, or unless such place shall be a dining, club or parlor car of a railroad train engaged in the transportation of passengers." Section 18 (a) provides: "For the purpose of this article any place selling malt, vinous or spirituous liquors by the drink not in full conformity with this article is a saloon. Any place selling malt, vinous or spirituous liquors in any manner whatever but under full compliance with the provisions of this article is not a saloon."

Section 18 (n) provides: " 'Restaurant' means an establishment provided with special space and accommodations, where in consideration of payment, meals are habitually furnished to guests, and whose principal business is the sale of meals and in which room nothing is sold excepting meals, food, drinks, and tobaccos, and where malt, vinous and spirituous liquors shall not be served at any place, excepting tables and lunch counters with stools securely fastened to the floor. Any establishment connected with any business whatsoever wherein any business is conducted, excepting the sale of meals, foods, drinks and tobaccos, or hotel business, is hereby declared not to be a restaurant, and any hotel not maintaining a restaurant regularly provided with special space and accommodations where meals are habitually furnished to guests is likewise declared not to be a restaurant." Section 18 (s) provides: " 'Meal' means a quantity of food of such nature as is ordinarily consumed by an individual at regular intervals for the purpose of sustenance, in the following places: 1. In any dining room of a hotel operated for the accommodation and reception of guests and travellers and where meals are regularly served at tables, and in any guest room thereof where the guest or traveller has meals served therein. 2. In the dining room of a restaurant where meals are regularly served at tables or lunch counters with stools securely fastened to the floor." Section 35 provides that: "Restaurants, as defined by this article, may sell spirituous liquors by the drink only to customers for consumption on the premises, but only in the room or rooms where meals are served and only with meals, * * *."

■ In the light of the foregoing, is the operation of shuffleboards a "business" within the contemplation of the statute? Plaintiff says "no"; defendants say "yes." The meaning of the word business was exhaustively considered in *Lindner Co. v. Industrial Commission,* 99 Colo. 143, 60 P. (2d) 924, 106 A.L.R. 1498, where more than three pages of the opinion are devoted thereto. From

the authorities therein cited, it appears that any activity which occupies the time, labor and attention of men for the purpose of a livelihood or profit is almost universally recognized as a "business." The correctness of this definition cannot be questioned by plaintiff herein since he alleges in his complaint, and recites in the stipulation of agreed facts upon which the case was tried, that he is "engaged in the business of selling, leasing, operating and installing on a gross income sharing basis, within the City and County of Denver, Colorado, and elsewhere, a certain product known as the American shuffleboard, which product is a table used for the purpose of playing the game known as shuffleboard. * * *"

It is argued, however, by plaintiff's counsel, that the operation of shuffleboards in restaurants, as herein contemplated, should not be construed to be a separate and distinct business, but merely as an ancillary or auxiliary activity, conducted in aid of, or in conjunction with, the main business of serving meals; that the words "nothing is sold" or the words "sold" or "sell," as used in the statutory definition of restaurant, could not be used with reference to the operation of shuffleboards, but of necessity must relate to tangible personal property; that if no ancillary business is permitted in connection with a restaurant selling liquor, the words "principal business" is without meaning or effect; that since the operation of such shuffleboards is not expressly prohibited by statute in such restaurants, it is unlawful to exclude them.

We are not prepared to place upon the liquor code such a strained or narrow construction. We are persuaded, as all parties hereto seem to agree, that the aim, intent, and primary purpose of the people in the adoption of article XXII of the Constitution, and of the general assembly in the passage of the liquor code, article 2, chapter 89, '35 C.S.A., was to completely outlaw and eradicate the old-time public saloon or barroom with its well-known obnoxious characteristics, vices and effects, and at the same time to authorize, under proper

regulations and safeguards, the sale and consumption of intoxicating liquors in bona fide restaurants and hotels. In order to accomplish the above purposes the following regulations and safeguards were inserted in the liquor code, to wit: That only in bona fide restaurants and hotels as defined by the code may liquor be sold by the drink and then only with meals; that restaurants licensed to sell intoxicating liquor must be provided with "special space and accommodations" where "meals are habitually furnished to guests" in "consideration of payment" made therefor; and where nothing is "sold excepting meals, food, drinks and tobaccos" and said code prohibits the serving of liquor "excepting [at] tables and lunch counters with stools securely fastened to the floor;" it also is ordained that if the restaurant is "connected with any business whatsoever wherein any business is conducted" (except those enumerated and not here involved), the legislature emphatically declared such establishments "not to be a restaurant;" and in order to prevent sham and fake establishments from selling liquor under the guise of being a restaurant or hotel, the legislature defined a meal as being "a quantity of food of such nature as is ordinarily consumed by an individual at regular intervals for the purpose of sustenance," "in the dining room of a restaurant where meals are regularly served at tables or lunch counters with stools securely fastened to the floor." It will be noted that *any* establishment connected with *any* business whatsoever, wherein *any* business is conducted, and in which intoxicating liquors are sold, ceases to be a restaurant, and by operation of law thereupon becomes a saloon. Every type of business is expressly prohibited in restaurants except the "sale of meals, foods, drinks and tobaccos."

 We are persuaded that the playing of the game of shuffleboard does not come within the above exceptions and cannot be considered as an ancillary or auxiliary activity in aid of the main business of serving meals, but on the contrary is a separate and distinct business wholly

incompatible with the type of restaurant defined in the act; that while playing said game the participants could not lawfully be served with liquor and food, since food and drinks must be served in the dining room of the restaurant or hotel, and upon tables and counters provided for such purpose and at a place where meals are regularly and habitually served; that the operation of shuffleboards for gain or profit, as here, constitutes a business within the meaning of the above definition and is prohibited by law in restaurants where liquor is sold with meals; that the contentions of plaintiff hereinabove set forth are too narrow and strained, and if adopted would tend to defeat rather than to effectuate the plain intent and purpose of the pertinent provisions of the Constitution and statutes.

The judgment of the trial court is accordingly reversed.

MR. JUSTICE HOLLAND not participating.