313 P.2d 319

Thomas R. KOPP and Mary Kopp, husband and wife, Plaintiffs-Appellants,

v.

Ed. D. BAIRD, Commissioner and Chairman of the State Tax Commission, Lloyd A. Fenn, Commissioner of the State Tax Commission, Joseph H. Nettleton, Commissioner of the State Tax Commission, T. C. Waddoups, Commissioner of the State Tax Commission, composing the State Tax Commission of the State of Idaho, and The State Tax Commission, P. G. Neill, Tax Collector of the State of Idaho, Defendants-Respondents.

No. 8532.

Supreme Court of Idaho.

June 25, 1957.

Rehearing Denied July 23, 1957.

Anderson & Anderson, Pocatello, for appellants.

Graydon W. Smith, Atty. Gen., Elbert E. Gass and Edward J. Aschenbrener, Asst. Attys. Gen., for respondents.

SMITH, Justice.

Appellants commenced this proceeding in the first instance as a declaratory judgment action some time prior to rendition of respondent State Tax Commissioner's formal order affirming respondent State Tax Collector's determination of a tax deficiency. Respondent State Tax Commission had entered said order by the time appellants filed their second amended complaint.

Appellants in their second amended complaint set forth that at all the times alleged they were and now are residents of the State of Idaho; that they own lands in the State of Wyoming to which appellant Thomas R. Kopp received patent October 24, 1924, from the United States; that, quoting appellants, "said lands were not put to any use until the Phillips Petroleum Company drilled a discovery well on said lands for oil and thereafter discovered paying oil deposit on said lands," and that appellants "receive as their share of said oil extracted from said land one-eighth of the value of the oil extracted therefrom."

Appellants then allege notice to them by respondent, State Tax Collector, of his determination of a deficiency of $1,356.50 in the amount of the tax shown by their tax return for the year 1951, to which they entered their formal protest for a re-determination by respondent State Tax Commission; that upon review, said Commission affirmed the determination of the deficiency as made by respondent, State Tax Collector.

Appellants then assert that the determination is illegal because an assessment pursuant thereto would result in taxation of "royalties from oil lands located in Converse County, Wyoming," and constitutes an attempt to tax the Wyoming land, whereas, the State of Idaho has no authority to tax said income assertedly arising from the land so situate outside this State.

The trial court sustained respondents' general demurrer to appellants' second amended complaint without leave to amend, and thereupon awarded judgment in favor of the respondent State Tax Collector for the amount of the deficiency, together with interest, until paid. Plaintiffs appealed from the judgment.

Appellants assign error of the trial court in determining in effect that the amount of the royalties, assertedly by appellants received pursuant to an oil lease in the State of Wyoming, is taxable in the State of Idaho.

The decisive question presented for determination is one of law, i. e., the validity of the deficiency tax determination. The second amended complaint shows such jus-

ticiable controversy, which should be settled. Appellants have requested this Court to pass upon such question and both parties have argued the merits. The record discloses sufficient facts upon which to base a decision, thereby to obviate another appeal. In Taggart v. Latah County, 78 Idaho 99, 298 P.2d 979, 980, this Court said:

"Although the trial court found the complaint did not state a cause of action, a justiciable issue is presented in this case, and the record discloses sufficient facts to base a decision upon and to obviate another appeal. We deem it proper to state our views upon the merits. Grayot v. Summers, 75 Idaho 125, 269 P.2d 765. The decisive question to be determined is not one of fact, but is purely one of law."

The tax provided by the Property Relief Act of 1931, ordinarily referred to as Idaho's income tax act, Idaho Sess.Laws 1931 (E.S.), c. 2; I.C., Tit. 63, c. 30, is a tax "upon every individual * * * which shall be according to and measured by his net income." I.C. § 63-3011. This Court, in Diefendorf v. Gallet, 51 Idaho 619, 634, 10 P.2d 307, 313, holding that the tax, measured by the amount of the net income is an excise, and not an imposition upon the property from which it is derived, or upon the source of the income, quoted from and adopted the reasoning of State ex rel. Sallie F. Moon Co. v. Wisconsin Tax. Comm., 166 Wis. 287, 163 N.W. 639, 165 N.W. 470, as follows:

"* * * It is the recipient of the income that is taxed, not his property; and the vital question in each case is, Has the person sought to be taxed received an income during the tax year? If so, such income, unless specifically exempted, is subject to a tax though the property out of which it is paid may have been exempt from an income tax in the hands of the payor. It is the relation that exists between the person sought to be taxed and the specific property claimed as income to him that determines whether there shall be a tax. If the person sought to be taxed is the recipient during the tax year of such specific property as income in its ordinary significance, then the person is taxed. *But the tax is upon the right or ability to produce, create, receive, and enjoy, and not upon specific property.* Hence the amount of the tax is measured by the amount of the income, irrespective of the amount of specific property, or ability necessary to produce or create it. In the ordinary acceptation of the term this may be said to be a tax upon income as the statute denominates it. But the tax does not seek to reach property, or an interest in property as such. It is a burden laid upon the recipient of an income."

In 85 C.J.S., Taxation, § 1090 b, pp. 701–703, is set forth certain principles in regard to the imposition upon the domiciliary taxpayer of a tax measured by his income received from whatever source, as follows:

"* * * Domicile or residence within the state is a valid basis for the imposition of an income tax by the state. It is competent for a state to impose a tax on the income of a resident thereof, or a domestic corporation, whether such income be derived from sources within or outside the state. The enjoyment of the privileges of residence within the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government, and a tax measured by the net income of residents is an equitable method of distributing the burden of government among those privileged to enjoy its benefits. The tax is founded on the protection afforded by the state to the recipient of the income in his person, in his right to receive the income, and in his enjoyment of it when received; these are rights and privileges which attach to domicile within the state and the economic advantage realized by the receipt of income and the power to control it bear a direct relationship to the rights and privileges attached to domicile and to the equitable distribution of the tax burden. Neither the privilege nor the burden is affected by the character of the source from which the income is derived and for that reason income is not necessarily clothed with the tax immunity enjoyed by its source. * * * It may also tax the income derived from land located outside the state although it is without power to tax the land; although where an income tax is regarded as a tax on the property from which the income is derived, an income tax may not be imposed on income from property located outside the state."

I.C. § 63–3013(b), subd. 7 exempts from taxation:

"Income of resident persons and domestic corporations of the state of Idaho * * * from the conducting and carrying on of their professions, vocations, trades or businesses, when derived from sources outside of the state of Idaho."

I.C. § 63–3019 provides in part:

"a. In the case of a nonresident individual to the extent that he has a business situs in the state of Idaho, * * * the following items of gross income shall be treated as income from sources within the state of Idaho:

* * * * * *

"3. Rentals or royalties from property located in the state or from any interest in such property."

I.C. § 63–3022, provides:

"The taxable income of a resident individual, trust or estate, or partnership, of the state of Idaho, to the extent that they have a business situs outside the state of Idaho, and of a domestic corporation of the state of Idaho, shall be determined by the method designated by sec. 63–3019 for determining gross income and items deductible from gross income."

In Barraclough v. State Tax Commission, 75 Idaho 4, 11, 266 P.2d 371, 375, it is stated:

"Section 63–3013, including (b), par. 7, Section 63–3019 and Section 63–3022, I.C., all deal with taxable income and * * * deal with the same subject matter, are in pari materia and must be read together to determine the legislative intent. Nampa Lodge No. 1389, etc. v. Smylie, 71 Idaho 212, 229 P.2d 991; State v. Casselman, 69 Idaho 237, 205 P.2d 1131.

"The three sections under discussion when taken together show a plan on the part of the Legislature to treat resident taxpayers and nonresident taxpayers on an equal basis. The income of a nonresident for personal services performed within the state to the extent that he has a *business situs* within the state is to be treated as taxable income. On the other hand, the income of a resident for personal services performed outside the state to the extent that he has a *business situs* outside the state is to be exempt from taxation by the state. The plan outlined by the three sections for determination of taxable income is simple, workable and equitable between residents and nonresidents.

" * * * It is the establishment of a business situs outside the state that brings into play the exemption from taxation."

Appellants, residents of the state of Idaho, do not allege a trade or business conducted or carried on by them having a situs in the State of Wyoming from which they derive the income. I.C. § 63–3013. Presumptively by failure so to allege, said facts do not exist. Towne v. Northwestern Mut. L. Ins. Co., 58 Idaho 83, 95, 70 P.2d 364; Bullock v. Joint Class "A" School Dist. No. 241, 75 Idaho 304, 310, 272 P.2d 292; J. I. Case Co. v. McDonald, 76 Idaho 223, 280 P.2d 1070.

It therefore is clear that the royalties received by appellants as resident individuals, must be regarded as a part of their Idaho income, thereby to measure the excise tax payable pursuant to the Property Relief Act of 1931 and its amendments, unless their mere ownership of said real property in the State of Wyoming constituted engaging in a trade or business at a business situs in that state.

■ Where words such as "trade" or "business" are used in a statute, their meaning depends upon the context, or the purpose of the legislature. Karnuth v. United States, 279 U.S. 231, 49 S.Ct. 274, 278, 73 L.Ed. 677; Herald v. Glendale Lodge No. 1289, B. P. O. E., 46 Cal.App. 325, 189 P. 329; Marsh v. Groner, 258 Pa. 473, 102 A. 127, L.R.A.1918F, 213; State ex rel. Benson v. Lakewood Cemetery, 197 Minn. 501, 267 N.W. 510; Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706; 12 C.J.S. Business p. 762.

■ The concept of the words "trade" and "business" as used in the text of the statute, I.C. § 63–3013(b), subd. 7, implies activities engaged in with a direct profit motive, in occupational and commercial aspects, and we so construe their meanings. City of Lewiston v. Mathewson, Idaho 1956, 303 P.2d 680.

"Trade" is defined by Webster's New Int'l Dictionary, 2nd Ed., in the occupational sense as the business one practices, or the work in which one engages regularly; occupation, gainful employment; means of livelihood. It is defined in the commercial sense as carrying on the business of bartering or buying and selling; the exchange, purchase or sale of commodities. See also 87 C.J.S. Trade pp. 202–205; 42 Words and Phrases, Trade, pp. 217–234; Black's Law Dictionary; Ballantyne's Law Dictionary, 3rd Ed.

I.C. § 63–3013(b), subd. 7 is in the disjunctive, "trades or businesses," as was the statute construed in the case of Massolini v. Driscoll, 1932, 114 Conn. 546, 159 A. 480, 482, wherein it is stated:

"The language of the statute is disjunctive—'trade or business.' Both terms are therefore to be given their natural meaning, and are not used synonymously. 'Trade' commonly connotes the buying, selling, or exchanging of commodities. 'Business,' however, is a much broader term * * * to signify 'that which busies or engages time, attention, or labor as a principal serious concern or interest.' Webster's Dictionary. In this sense it embraces everything about which one can be employed."

"Business" in the commercial sense refers to "any activity which occupies the time, labor and attention of men for the purpose of a livelihood or profit." City and County of Denver v. Gushurst, Colo.1949, 210 P.2d 616, 618. It implies some constant and connected employment. Board of Supervisors of Amherst County v. Boaz, 1940, 176 Va. 126, 10 S.E.2d 498. See also Smallwood v. Jeter, 42 Idaho 169, 244 P. 149; City of Lewiston v. Mathewson, supra; Hazen v. National Rifle Ass'n of America, 1938, 69 App.D.C. 339, 101 F.2d 432; Burk v. United States, 5 Cir., 1943, 134 F.2d 879; Amundsen v. Poppe, 1948, 227 Minn. 124, 34 N.W.2d 337; Employers' Liability

Assur. Corp. v. Accident & Cas. Ins. Co., 6 Cir., 1943, 134 F.2d 566, 146 A.L.R. 1186; 12 C.J.S. Business p. 765.

Webster's New Int'l Dictionary, 2nd Ed., defines "situs" as a location or a locality. 5 Words and Phrases, pp. 1040–1048, sets forth various definitions of "business situs." Those words as used in I.C. § 63–3022, referring to the taxable income of a resident individual having a business situs outside of the state of Idaho, recognizes that personal property may attain an actual situs different from the domicile of its owner, as regards the place of taxation, Miami Coal Co. v. Fox, 1931, 203 Ind. 99, 176 N.E. 11, 14, 79 A.L.R. 333; but the "business situs" arises where possession and control of a property right is localized in some independent business or investment, which may be foreign to the owner's domicile so that the substantial use and value of the property right is primarily attached to and becomes an asset of such foreign business of the owner. State v. Atlantic Oil Producing Co., 1935, 174 Okl. 61, 49 P.2d 534; Glen v. Buck, Okl.1954, 272 P.2d 573; Tax Commission v. Kelly-Springfield Tire Co., 1931, 38 OhioApp. 109, 175 N.E. 700; Gulley v. C. I. T. Corporation, 1933, 168 Miss. 268, 150 So. 367; St. Louis Union Trust Co. v. State, 1941, 348 Mo. 725, 155 S.W.2d 107; 84 C.J.S. Taxation § 116 c, p. 235.

The Property Relief Act of 1931 and amendments, having incorporated in substantial part the provisions of the Federal Revenue Acts, will be presumed as adopted with its prior constructions by the courts of the foreign jurisdiction. I.C. § 63–3085; Girard v. Defenbach, 61 Idaho 702, 106 P.2d 1010.

If appellants can be said to have established and maintained a business situs in the state of Wyoming, then the income which they assert as exempt from taxation in the state of Idaho, must necessarily have arisen by reason of their having engaged in, or conducted and carried on a trade or business in the state of Wyoming. "Engaging in a trade or business" as that term is used in determining taxable income under the Federal Revenue Acts, for all practicable purposes is the same as "conducting and carrying on * * * trades or businesses" as set out in I.C. § 63–3013(b), subd. 7. Supreme Malt Products Co. v. United States, 1 Cir., 1946, 153 F.2d 5; Lewellyn v. Pittsburgh, B. & L. E. R. Co., 3 Cir., 1915, 222 F. 177.

In Lewellyn v. Pittsburgh, B. & L. E. R. Co., supra, which arose under the Federal Revenue Act of 1909, 222 F. at page 185, it is said:

"The manner in which the expressions 'engaged in,' 'carrying on,' or 'doing' business are joined in the statute does not denote that the expressions are used in opposition to one another, or that separately they express different meanings. * * * The three

expressions, either separately or connectedly, convey the idea of progression, continuity, or sustained activity. 'Engaged in business' means occupied in business; employed in business. 'Carrying on business' does not mean the performance of a single disconnected business act. It means conducting, prosecuting, and continuing business by performing progressively all the acts normally incident thereto, and likewise the expression 'doing business,' when employed as descriptive of an occupation, conveys the idea of business being done, not from time to time, but all the time."

In City Bank Farmers Trust Co. v. Commissioner of Internal Revenue, 2 Cir., 1940, 112 F.2d 457, it was held that a passive recipient of income or a mere investor, either in his own capacity or through an agent, is not regarded as "carrying on a trade or business" so as to be entitled to deduct from income for income tax purposes the ordinary expenses allowed one engaged in carrying on a business, within the purview of the Federal Revenue Act of 1928, § 23(a), 26 U.S.C.A. § 23(a).

In Moynier v. Welch, 9 Cir., 1938, 97 F.2d 471, 472, which arose under the Federal Revenue Act of 1928, it is stated:

"We hold in accord with Croker v. Helvering, 67 App.D.C. 226, 91 F.2d 299, that receiving royalties by the owner of land for oil produced by a company under an oil lease of the land is not within the intendment of the statutory expression 'carrying on any trade or business.' The receipt of money from the oil company which produced the oil under a lease of plaintiff's ground was no more a 'business' than the selling of one's own real estate is a 'business.'"

Clearly appellants, residents of the state of Idaho, did not receive said royalties from their conducting and carrying on a trade or business outside the state of Idaho having a business situs in the state of Wyoming.

Royalty, paid pursuant to an oil lease, refers not to the oil and gas in a place, but to a share in the oil and gas produced, and paid as compensation for the right to drill and produce, and does not include a perpetual interest in the oil and gas in the ground. Webster's New Int'l Dictionary, 2nd Ed.; Burden v. Gypsy Oil Co., 1935, 141 Kan. 147, 40 P.2d 463; Rist v. Toole County, Mont.1945, 159 P.2d 340; Duvall v. Stone, 54 N.M. 27, 213 P.2d 212; State ex rel. Dickgraber v. Sheridan, Mont.1953, 254 P.2d 390; Simson v. Langholf, 1956, 133 Colo. 208, 293 P.2d 302. In Longino v. Machen, 1950, 217 Ark. 641, 232 S.W.2d 826, at page 827, it is said:

"* * * We are aware that this term is sometimes loosely used to mean an interest in minerals in place, but it is well settled that the ordinary and

legal meaning of the term is a share of the product or profit, to be paid to the grantor or lessor by those who are allowed to develop the property. It has often been pointed out that the ordinary meaning of royalty does not include a perpetual interest in oil or gas in the ground. [Citations.] On two occasions we have interpreted language not wholly dissimilar to that now before us as meaning royalty payments to the lessor rather than an interest in the minerals themselves. [Citations.]"

Mertens Law of Federal Income Taxation, sec. 24.61, p. 198, reads in part:

"Royalties as Income. Royalties are received by the fee owner of natural resources or someone holding under him and usually represent the return for idle ownership, unaccompanied by operation with its problems and expenses. Such royalties are taxable income to the recipient, and are not to be regarded as a return of capital, even if the net result of the operation is a conversion of capital assets. Such royalties are taxable even if they are minimum royalties. The Supreme Court has refused to recognize any distinction between a bonus and ordinary royalties. The courts have refused to treat ordinary royalties and bonuses as proceeds of the sale of properties and subject to the capital gains provisions,

although they have made a distinction as to outright sales. * * *."

In the same work, sec. 24.62, p. 199, in part reads:

"Distinction Between Oil and Gas and Solid Minerals as the Subject of Sale. There is a distinction between solid minerals and such fugitive, migratory and volatile minerals as oil and gas with respect to the question whether they may constitute the subject of sale in place. The general rule is that solid minerals may be the subject of a conveyance in place, but the rule is different with respect to oil and gas, which are held not to be susceptible of conveyance prior to their removal to the surface, the right in them being only the right to explore and reduce them to possession."

The balance of said sec. 24.62 answers in the negative the assertion of appellants, relying upon Texas cases, that royalties constitute land for the purposes of taxation:

"Texas is an exception to the general rule and has adopted the same rule with respect to oil and gas as that obtaining with respect to solid minerals. Many of the cases in the courts discuss at some length the state law or local law of property on this subject. Much of this discussion is now academic since the Supreme Court and

lower courts have held that local rules of property will not govern the interpretation of income tax acts."

See: In re Randolph's Estate, 175 Kan. 685, 266 P.2d 315; Simson v. Langholf, supra; 77 C.J.S. Royalties pp. 542–543; Annotations, 90 A.L.R. 770, 101 A.L.R. 884 and 4 A.L.R.2d 492.

■ It is thusly clear that royalty agreed to be paid under an oil and gas lease, in instances where, as here, no sale was involved requiring the royalty to be credited upon a sale price, is, as appellants allege an agreed share "of the value of the oil extracted," and is the right to share in personal property when it comes into existence as such; it is the consideration agreed to be paid by the lessee for the lease which includes a profit a prendre, an incorporeal right arising from the lease which is an incorporeal hereditament, and as such is intangible personal property. 73 C.J.S. Property, Incorporeal Hereditaments, § 7 c, p. 168; Burden v. Gypsy Oil Co., supra; 90 A.L.R., Annotations, p. 770. And as stated in Arrington v. United Royalty Co., 1933, 188 Ark. 270, 65 S.W.2d 36, 37, 90 A.L.R. 765:

"* * * it is clear from all of the decisions that ordinarily accrued royalties, strictly speaking, are a mere chose in action, and therefore personal property."

■ The doctrine of mobilia sequuntur personam generally applies, for purposes of taxation, to intangible personal property. Such personal property ordinarily follows the person and has its taxable situs at the domicile of the owner. Beverly Beach Properties v. Nelson, Fla.1953, 68 So.2d 604, 41 A.L.R.2d 1071, certiorari denied Rensta v. Beverly Beach Properties, 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643; Vogel v. New York Life Ins. Co., 5 Cir., 1932, 55 F.2d 205, certiorari denied 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 525; Chavala Cooperative v. Hortman, 1956, 93 Ga.App. 505, 92 S.E.2d 236; State of California ex rel. Houser v. St. Louis Union Trust Co., Mo.App.1953, 260 S.W.2d 821, certiorari granted State of California ex rel. Brown v. St. Louis Union Trust Co., 348 U.S. 808, 75 S.Ct. 22, 99 L.Ed. 638, certiorari dismissed 348 U.S. 932, 75 S.Ct. 354, 99 L.Ed. 731; Geitz v. Gray, Mo.App.1955, 280 S.W.2d 859; Edwards v. Sullivan, 200 Misc. 488, 102 N.Y.S.2d 951; Elliott v. Mosgrove, 1939, 162 Or. 507, 91 P.2d 852, rehearing denied 162 Or. 507, 93 P.2d 1070; 15 C.J.S. Conflict of Laws § 18 c, p. 929; 11 Am.Jur., Conflict of Laws, sec. 65, p. 352. Only when such personal property has acquired a "business situs" foreign to the owner's domicile, by becoming an integral part of a business of the owner there carried on, does it assume a taxable situs in the foreign jurisdiction. Wheeling Steel Corp. v. Fox, W.Va.1936, 298 U.S. 193,

56 S.Ct. 773, 80 L.Ed. 1143; rehearing denied 299 U.S. 619, 57 S.Ct. 4, 81 L.Ed. 456; Vogel v. New York Life Ins. Co., supra; Stone v. Stapling Machines Co., 1954, 220 Miss. 470, 71 So.2d 205, appeal dismissed 348 U.S. 802, 75 S.Ct. 31, 99 L.Ed. 633, rehearing denied 348 U.S. 884, 75 S.Ct. 123, 99 L.Ed. 695; Suttles v. Northwestern Mut. Life Ins. Co., 1942, 193 Ga. 495, 19 S.E.2d 396, rehearing denied 193 Ga. 495, 21 S.E. 2d 695, 143 A.L.R. 343; Baker v. State, 1932, 186 Minn. 160, 242 N.W. 697; People ex rel. Tobacco & Allied Stocks v. Graves, 250 App.Div. 149, 294 N.Y.S. 995, affirmed 277 N.Y. 723, 14 N.E.2d 821; Holly Sugar Corporation v. McColgan, Cal.1941, 115 P.2d 8; 84 C.J.S. Taxation § 116, p. 229; 51 Am.Jur., Taxation, sec. 468, p. 479.

The judgment of the trial court is affirmed. No costs allowed.

TAYLOR and McQUADE, JJ., concur.

PORTER, Justice, with whom KEETON, Chief Justice, concurs, (dissenting).

I cannot agree with the conclusion reached in this case by the majority. Without challenging the power of the legislature to tax the royalties in question, I am of the opinion the legislature did not intend to tax rents and royalties of this nature and has not done so. The determination of the question in issue in this case involves an interpretation of three statutes, which are in substance as hereinafter set out:

Section 63-3013(b), subd. 7, I.C., exempts from taxation the income of residents from salaries, wages or compensation for personal services, or income from the conducting and carrying on of their professions, vocations, trades or businesses, when derived from sources outside of the State of Idaho. Nothing is said in this section about a business situs outside the state.

Section 63-3019, I.C., deals with the taxable income of non-residents and says that to the extent that a non-resident has a business situs in the State of Idaho, certain items of his gross income shall be treated as income from sources within the state. It then names interest on bonds and notes, compensation for labor or personal services performed in the state, rents and royalties from property located in the state or from any interest in such property, and gains from sale of real property located in the state.

Section 63-3022, I.C., deals with the taxable income of a resident and says that to the extent a resident has a business situs outside the state, his taxable income shall be determined as the taxable income of a non-resident is determined in Section 63-3019, I.C.

It appears that these three statutes, standing separate and apart, have inconsistent provisions. Section 63-3013(b), subd. 7, I. C., exempts all income arising outside of

the state. Section 63–3022, I.C., modifies and limits such exemptions to cases where the resident taxpayer has a business situs in the foreign state. In Barraclough v. State Tax Commission, 75 Idaho 4, 266 P.2d 371, although we were dealing with personal earnings claimed to have been earned outside the State of Idaho and not with income from real estate, we attempted to reconcile these three statutes and held that they showed a plan and purpose on the part of the legislature to treat resident taxpayers and non-resident taxpayers on an equal basis.

The situs of personal property is the residence of the owner unless otherwise fixed. The situs of real estate is fixed and is not transient. For tax purposes the situs of real estate constitutes a business situs as required by Section 63–3019, I.C. Otherwise there would be no authority for the State of Idaho to tax rents and royalties arising from real estate in this state owned by a non-resident who had not established a business situs in this state; and such rents and royalties would escape taxation.

In the case at bar the royalties derived by appellants from lands located in Wyoming are subject to tax in Wyoming. If we likewise tax such income we have subjected it to three income taxes, to-wit, the federal government, the State of Wyoming and the State of Idaho. Such treatment is contrary to Section 63–3022, I.C., which contemplates equal treatment of a non-resident owning land in Idaho and the resident owning land outside of Idaho.

If we hold that the rents and royalties arising in Wyoming are subject to tax against the resident owners because such owners have not established a business situs in Wyoming, then we have, in effect, prohibited the State of Idaho from taxing the rents and profits from real estate owned in Idaho by non-residents unless such non-residents come into Idaho and establish a business situs in addition to the situs of the real estate. I cannot believe that the legislature ever intended to or did as a matter of fact so limit the taxation of rents and royalties from such real estate.

While double taxation of rents and royalties from real estate by different states is not necessarily forbidden, an intention to create double taxation should not be lightly ascribed to the legislature. I believe that my interpretation of the statutes in question is fair to both the resident and the non-resident, preserves the rights of the states to tax income arising within their state, does not result in double taxation and expresses the intention of the legislature in the enactment of the statutes involved. Such interpretation would result in a simple, workable and equitable plan for taxation of rents and royalties from real estate wherever located or whether owned by resident or non-resident. I would reverse the judgment of the trial court.