915 P.2d 713

**TTX (formerly Trailer Train) COMPANY, a Delaware Corporation, Plaintiff–Respondent,**

v.

**IDAHO STATE TAX COMMISSION; and Larry G. Looney, Carol M. Dick, Robert A. Fry, and Robert Hodge, as members and constituting the Idaho State Tax Commission, Defendants–Appellants.**

No. 20525.

Supreme Court of Idaho,
Boise, January 1996 Term.

April 22, 1996.

Larry EchoHawk, Attorney General, and Carl E. Olsson, Deputy Attorney General, argued, Boise, for appellant. Carl E. Olsson argued.

Marcus, Merrick & Montgomery, Boise, for respondent. Barry L. Marcus argued.

**SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED MAY 11, 1995 IS HEREBY WITHDRAWN**

## ON REHEARING

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND PROCEDURE

The facts of this case are not in dispute. TTX Company (TTX) is a Delaware corporation not qualified to do business in Idaho. TTX leases railroad cars to various railroads that operate within this state. The charges for the leased cars are computed on a per-day and per-mile basis, and are not influenced by state boundaries. The railroads have total control over the use and location of the cars during the term of the lease. The only contact TTX has with Idaho is the presence of its rail cars in this state while under the control of the leasing railroads. Cars leased by TTX are present in this state while in the possession of the railroads, and TTX pays Idaho property taxes on those cars.

The Idaho State Tax Commission (the "Commission") issued three deficiency determinations, reflecting that TTX owed state income taxes for the years 1977–79, 1983–85, and 1986–87 respectively. TTX paid the deficiencies under protest and filed three complaints in district court, contending that Idaho's income tax statute does not apply to TTX. TTX also argued that, if the tax statute does reach TTX, imposing the tax would violate the Due Process and Commerce Clauses of the United States Constitution. In its answers to each of TTX's complaints, the Commission largely conceded the facts pertinent to this appeal. The district court consolidated the cases into a single appeal.

TTX and the Commission filed identical motions for summary judgment, arguing that no disputed issues of material fact existed as to either the statutory or constitutional claims. The district court denied the Commission's motion and granted summary judgment in favor of TTX, holding that Idaho's income tax statute does not reach TTX. Because it held that the income tax statute did not apply to TTX, the court did not rule on the constitutional issues presented by the motions. The Commission appealed the district court's decision.

## II.

### STANDARD OF REVIEW

The Idaho Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When reviewing an order granting summary judgment, this Court must apply the same standard required of the trial court when ruling on the motion, drawing all reasonable inferences presented by the record in favor of the party opposing the motion. *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994); *Harris v. Dep't of Health & Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1993).

However, in cases where both parties move for summary judgment based on the same issues and supported by the same uncontradictory evidence, the record presents no disputed issues of material fact. *See American Smelting & Ref. Co. v. Idaho State Tax Comm'n*, 99 Idaho 924, 933, 592 P.2d 39, 48 (1979) (where facts are based on stipulation, review is based substantially on questions of law), *rev'd on other grounds sub nom., ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 720–21, 791 P.2d 1285, 1299–300 (1990) (if the evidence reveals no disputed issues of material fact, the trial court should grant summary judgment).

What remains is a question of law, over which this Court exercises free review. *Harris*, 123 Idaho at 297, 847 P.2d at 1158.

### III.

### THE IDAHO INCOME TAX STATUTE DOES NOT APPLY TO TTX

The Idaho Income Tax Act imposes a tax on "the taxable income derived from sources within this state by a corporation which transacts or is authorized to transact business in this state or which has income attributable to this state." I.C. § 63–3025. The parties agree that TTX neither transacts nor is authorized to transact business in Idaho. Thus, in order to determine whether Idaho's tax statute applies to TTX, we must first determine whether TTX has income attributable to this state.

The portion of taxable corporate income attributable to, and properly taxable by, Idaho is defined by I.C. § 63–3027. That section provides that "[t]he Idaho taxable income of any corporation with a business situs in this state shall be computed and taxed in accordance with the rules set forth in this section[.]" I.C. § 63–3027. When addressing the question of whether TTX has business situs in Idaho, the district court relied upon this Court's decision in *Kopp v. Baird*, 79 Idaho 152, 313 P.2d 319 (1957), in which we held that:

> "[B]usiness situs" arises where possession and control of a property right is localized in some independent business or investment ... so that the substantial use and value of the property right is primarily attached to and becomes an asset of such foreign business of the owner.

*Id.* at 161, 313 P.2d at 323. Finding that the property in this state was not directly connected to TTX's integral business operations, the district court held that TTX does not have business situs in Idaho.

■ It is important to note at the outset that, at the time the *Kopp* Court issued its decision, Idaho had no statutory definition of the phrase "business situs." The legislature has since defined that phrase within the Idaho Income Tax Act, stating that " 'business situs' shall include or be constituted by the owning or operating of business facilities or property or conducting business or farming operations, including soliciting business, within the state of Idaho...." I.C. § 63–3023(a). This definition unambiguously provides that owning property within Idaho constitutes a business situs within this state. This Court must give full effect to the clearly stated intent of the legislature. *See, e.g., State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992) ("When a statute is unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted, and a reviewing court may not apply rules of construction.") (citations omitted). TTX agrees that it has rail cars in this state, and pays property tax on those cars. Therefore, under the express terms of I.C. § 63–3023, TTX has business situs in Idaho. *Cf. Central R.R. v. Pennsylvania*, 370 U.S. 607, 615, 82 S.Ct. 1297, 1303, 8 L.Ed.2d 720 (1962) ("Habitual employment within the State of a substantial number of cars, albeit on irregular routes, may constitute sufficient contact to establish a tax situs permitting [property] taxation of the average number of cars so engaged.").

As a corporation with business situs in this state, the amount of tax TTX must pay is governed by I.C. § 63–3027. In order to apply the rules set forth in that section, it is first necessary to distinguish between business and nonbusiness income. "Business income" is defined in I.C. § 63–3027(a)(1) as "income arising from transactions and activity in the regular course of the taxpayers' trade or business and includes income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayers' trade or business operations." [1] In order to be taxable in this state, some portion of the "income arising from transactions and activities" must arise from transactions and activities conducted in this state.

---

1. Nonbusiness income is defined as "all income other than business income." I.C. § 63– 3027(a)(4).

See American Smelting, 99 Idaho at 931, 592 P.2d at 46 ("[T]he income referred to in subsection (a)(1) [of I.C. § 63–3027] is income arising from the taxpayer's trade or business which is conducted, in part at least, in this state.").[2]

■ The affidavit of Henry Logan, senior vice president of TTX, filed in support of TTX's motion for summary judgment, established that TTX undertook no activity and conducted no business transactions in Idaho. The Commission presented no evidence in opposition to TTX's motion for summary judgment sufficient to raise a question of fact as to whether TTX transacted business in Idaho during the relevant tax years. The affidavits submitted by the Commission aver that cars owned by TTX are present in Idaho, and are sometimes parked at railroad sidings for extended periods, that state disaster services are involved in the protection of property connected with rail transport, and that TTX pays Idaho property taxes in proportion to the value of its cars present in Idaho while in the possession of the railroads. None of the evidence adduced by the Commission is sufficient to establish the existence of a question of fact as to whether TTX transacts business or undertakes activities within Idaho. See Farm Credit Bank of Spokane v. Stevenson, 125 Idaho 270, 272–73, 869 P.2d 1365, 1367–68 (1994) (non-moving party must establish the existence of particular facts sufficient to create a genuine issue of material fact as to the element of that party's case challenged by moving party's evidence).

■ Because TTX conducts no business transactions or activities in Idaho, it derives no "business income" from the presence of its cars in this state. The method for allocating TTX's income tax on cars allocated to Idaho is therefore governed by I.C. § 63–3027(e)(3). Under I.C. § 63–3027(d), any rental income derived from the presence of

its property in this state is allocated according to the provisions of I.C. §§ 63–3027(e) through (h). I.C. § 63–3027(e)(3) provides that "[i]f the physical location of the property during the rental or royalty period is unknown or unascertainable by the taxpayer, tangible personal property is utilized in the state in which the property was located at the time the rental or royalty payer obtained possession." There is no dispute that the physical location of specific cars leased to the railroads is unknown to TTX, nor is there any dispute that the Railroads take possession of the cars outside of Idaho. The district court therefore did not err by granting summary judgment in favor of TTX.

## IV.

## THERE IS NO VIOLATION OF THE INTERNAL CONSISTENCY RULE

■ The Commission argues that if the Court applies the holding in American Smelting to the facts in this case, the Court's decision will violate the internal consistency rule, thus subjecting a taxpayer's income to double taxation. "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." Oklahoma Tax Comm'n v. Jefferson Lines, Inc., — U.S. ——, ——, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261 (1995). If a tax is not internally consistent, the taxing state is attempting to take more than its fair share of taxes from an interstate transaction. Id.

■ The test for determining whether a tax is consistent with the Commerce Clause, was set forth by the United States Supreme Court in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d

---

**2.** In American Smelting, this Court's limiting construction of I.C. § 63–3027(a)(1) was a basis upon which this Court rejected a constitutional challenge to the application of that statute. This Court held:

We believe that any constitutional limitations upon a state's right to apportion the intangible income, including dividends, of a multistate

corporation doing business within this state are satisfied by the Idaho statutory requirement that the acquisition, management or disposition of the underlying asset must be an integral or necessary part of the taxpayer's unitary business, a part of which is conducted in this state.

American Smelting, at 938, 592 P.2d at 53.

326 (1977). A tax will be sustained, "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit*, 430 U.S. at 279, 97 S.Ct. at 1079. The internal consistency test focuses on the second step of the *Complete Auto Transit* test; whether a state is taking its fair share of the taxpayer's income. Based upon our holding that TTX did not conduct business transactions or activities in the state of Idaho, we do not reach the issue of whether our decision violates the internal consistency test. There is no issue of whether the Court fairly apportioned TTX's income to Idaho, relative to other states, based upon our holding that Idaho is not entitled to any portion of TTX's income. There is no risk that Idaho has taxed more than its fair share of TTX's income, such that if another state tried to claim its fair share of TTX's income, TTX would be subject to double taxation.

## V.

### CONCLUSION

Based upon our determination that TTX's income is not subject to Idaho's income tax, we do not reach the issue of whether Idaho's income tax would violate the Commerce Clause. The district court's order denying the Commission's motion for summary judgment and granting summary judgment in favor of TTX is affirmed. Costs on appeal to respondent.

SILAK and SCHROEDER, JJ., concur.

JOHNSON, Justice, joined by TROUT, Justice, dissenting.

I respectfully dissent from the Court's opinion. In my view, the Idaho corporate income tax statutes make TTX liable for income tax based on the income from the lease of the rail cars that are used in Idaho. In my view, taxing TTX on this income does not violate the Due Process Clause of the Fourteenth Amendment. Based on the evidence presented in support of TTX's motion for summary judgment, there is no basis for a ruling that taxing TTX on this income

violates the Commerce Clause of the U.S. Constitution.

### THE IDAHO INCOME TAX STATUTE APPLIES TO TTX.

In order for income to be classified as "business income," there must be a direct relationship between the income-generating asset and the taxpayer's business or trade. *American Smelting v. Tax Comm'n*, 99 Idaho 924, 933, 592 P.2d 39, 48 (1979). Because TTX's operations consist almost entirely of the acquisition and disposition of interests in rail cars, the income TTX derives from renting the rail cars is "business income" within the meaning of I.C. § 62–3027(a)(1).

In my view, the Court incorrectly relies on dicta from *American Smelting* in reaching a contrary conclusion. The Court cites *American Smelting* as authority for the following principle: "In order to be taxable in this state, some portion of the 'income arising from transactions and activities' must arise from transactions and activities conducted in this state." I first note that this statement is dicta because there was no question in *American Smelting* about the taxpayer having income from transactions and activities in Idaho. More importantly, the Court attenuates the quotation from *American Smelting,* and thereby deprives the statement of its true meaning. The full statement from *American Smelting* reads:

> First, the income referred to in [I.C. § 63–3027(a)(1)] is income arising from the taxpayer's trade or business which is conducted, in part at least, in this state. Some corporations, particularly large conglomerates, may be engaged in several separate and distinct trades or businesses. The state may include as business income only the taxpayer's income arising from a trade or business conducted in this state and is not entitled to apportion income arising from a trade or business having no connection with this state.

99 Idaho at 931, 592 P.2d at 46.

It is clear to me that the reference to the state including as business income only the taxpayer's income arising from a trade or business conducted in this state refers to the

circumstance stated in the immediately prior sentence: a corporation that engages in several separate and distinct trades or businesses. The reference was not intended to be to a trade or business which is conducted, in part at least, in this state.

I conclude that TTX derived some business income from sources attributable to this state, and would then determine what portion of TTX's income was "Idaho taxable income" under I.C. § 63–3027(i), which provides:

> All business income ... shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three (3).

I.C. § 63–3027(i).

The property, payroll, and sales factors, defined in I.C. §§ 63–3027(j)–(o), are the ratios between the corporation's total property, payroll, and sales during the tax period, and that portion of these factors in Idaho during the tax period.

TTX admits to having property in this state during the relevant tax periods, and the tax commission admits that TTX paid no payroll and had no sales in this state during these periods. The tax commission therefore correctly computed the portion of TTX's taxable income attributable to this state by applying the formula for computing business income set out in I.C. § 63–3027.

## TAXING TTX ON INCOME IT RECEIVED FROM PROPERTY IN IDAHO DOES NOT VIOLATE THE DUE PROCESS CLAUSE.

In *Blangers v. Dept. of Revenue & Taxation*, 114 Idaho 944, 763 P.2d 1052 (1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989), this Court reviewed at length the substantial nexus requirement of both the Due Process Clause and the Commerce Clause where a state attempts to impose income tax on nonresidents. Four years later, in *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), a state use tax case, the Supreme Court reiterated established concepts it has employed in measuring whether a state tax imposed on a multi-state corporation passes muster under the Due Process Clause:

> The Due Process Clause "requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax," *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–345, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954), and that the "income attributed to the State for tax purposes must be rationally related to 'values connected with the taxing State.'" *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978).

*Id.* at 306, 112 S.Ct. at 1909–10.

The Supreme Court then traced the development of due process jurisprudence in the area of judicial jurisdiction and concluded:

> Comparable reasoning justifies the imposition of the collection duty on a mail-order house that is engaged in continuous and widespread solicitation of business within a State. Such a corporation clearly has "fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign." ... Thus, to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process.

*Id.* at 308, 112 S.Ct. at 1911 (citation omitted).

In *Quill*, the Supreme Court then distinguished the due process "minimum contacts" test from the Commerce Clause "substantial nexus" test:

> Despite the similarity in phrasing, the nexus requirements of the Due Process and Commerce Clauses are not identical. The two standards are animated by different constitutional concerns and policies.
>
> Due process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him. We have, therefore, often iden-

tified "notice" or "fair warning" as the analytic touchstone of due process nexus analysis.

*Id.* at 312, 112 S.Ct. at 1913.

In *Allied–Signal, Inc. v. Director, Div. of Taxation,* 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992), a state income tax case, the Supreme Court clarified its intent in *Quill* concerning the necessary minimum connection to satisfy the Due Process Clause:

> Although our modern due process jurisprudence rejects a rigid, formalistic definition of minimum connection, [citing *Quill*], we have not abandoned the requirement that, in the case of a tax on an activity, there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax.

*Id.* at 778, 112 S.Ct. at 2258.

The activity that was the subject of the tax in this case was the lease of rail cars by TTX to railroad companies that operated the cars in Idaho. As evidenced by the "standing car count," at least some of the rail cars stopped in Idaho. TTX received lease income based on the presence and use of the rail cars while they were in Idaho. Although TTX did not direct the rail cars to Idaho, it did not prohibit the lessor railroad companies from bringing the cars here. The fact that TTX paid property taxes on the rail cars in Idaho indicates TTX's knowledge of the presence of the cars here and its responsibility for the ownership of the cars while they were in this state.

These circumstances are a sufficient connection of this state with the lease income received by TTX for the use of rail cars in Idaho to satisfy the minimum contacts requirement of the Due Process Clause.

## THERE IS INADEQUATE EVIDENCE TO GRANT TTX SUMMARY JUDGMENT ON THE COMMERCE CLAUSE ISSUE.

In *Quill,* the Supreme Court reaffirmed the Commerce Clause test established in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977):

Under *Complete Auto's* four-part test, we will sustain a tax against a Commerce Clause challenge so long as the "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State."

*Quill,* 504 U.S. at 311, 112 S.Ct. at 1912.

In *Quill,* the Supreme Court stated that the second and third parts of the test "require fair apportionment and non-discrimination, prohibit taxes that pass an unfair share of the tax burden onto interstate commerce." *Id.* at 313, 112 S.Ct. at 1913.

The real focus of TTX's Commerce Clause challenge is the first and fourth parts of the *Complete Auto* test. In *Quill,* the Supreme Court described these two parts of the test, and focused on the effect of the first part:

> The first and fourth prongs, which require a substantial nexus and a relationship between the tax and State-provided services, limit the reach of State taxing authority so as to ensure that State taxation does not unduly burden interstate commerce.
>
> Thus, the "substantial-nexus" requirement is not, like due process' "minimum-contacts" requirement a proxy for notice, but rather a means for limiting state burdens on interstate commerce.
>
> Accordingly, contrary to the State's suggestion, a corporation may have the "minimum contacts" with a taxing State as required by the Due Process Clause, and yet lack the "substantial nexus" with that State as required by the Commerce Clause.

*Id.* at 313, 112 S.Ct. at 1913–914.

In *Blangers,* this Court analyzed the substantial nexus requirement in great detail. 114 Idaho at 947–52, 763 P.2d at 1055–60. Because we did not have the clarification of *Quill* concerning the difference in the nexus requirements of the Due Process Clause and the Commerce Clause, we did not appreciate the less stringent standard the Supreme Court would apply for nexus (minimum contacts) under the Due Process Clause. Nevertheless, our analysis of substantial nexus in

*Blangers* remains applicable to the Commerce Clause.

In rejecting the presence of substantial nexus in *Blangers,* we focused on whether the income which the state was attempting to subject to a tax was attributable to any economic activity within Idaho, and whether Idaho markets and commerce affected the income in any degree. *Id.* at 951, 763 P.2d at 1059. Because the evidence presented to the trial court indicated that wages of the train crews that passed through the state without stopping were not attributable to any economic activity within Idaho and were not affected by Idaho markets and commerce, we concluded there was no substantial nexus. In this case, so far as the evidence presented in support of TTX's motion for summary judgment discloses, we do not have a similar situation.

The burden was on TTX to present admissible evidence in support of its motion for summary judgment that would establish a basis for granting summary judgment to TTX on the Commerce Clause issue. *Thompson v. Pike,* 122 Idaho 690, 698, 838 P.2d 293, 301 (1992). TTX did not present any evidence in support of its motion for summary judgment indicating that none of the income TTX received from the lease of the rail cars was attributable to economic activity within Idaho or was affected by Idaho markets and commerce. TTX did not present any evidence that the presence of the rail cars in Idaho was only for transit across the state or for storage, not to transport goods into or out of the state. Therefore, we have no basis for applying *Blangers* to TTX's Commerce Clause claim on summary judgment. I would vacate the summary judgment and remand the case to the trial court for further proceedings concerning the Commerce Clause issue.